Matthew T. Christensen, ISB: 7213
ANGSTMAN JOHNSON
199 N. Capitol Blvd., Ste 200
Boise, ID 83702
Phone: (208) 384-8588
Fax: (208) 629-2157
Email: mtc@angstman.com

Attorney for Plaintiff

UNITED STATES BANKRUPTCY COURT

DISTRICT OF IDAHO

| | |
|---|---|
| In re:<br><br>SHILOH MANAGEMENT SERVICES, INC.,<br><br>   Debtor. | Case No. 17-01458-JMM |
| NOAH HILLEN, solely in his capacity as Chapter 7 Trustee for the above-referenced bankruptcy estate,<br><br>   Plaintiff,<br><br>vs.<br><br>LUCILLE BORSES FAMILY TRUST; an Idaho trust, DOES 1-5,<br><br>   Defendants. | Adv. Case No. 19-06003-JMM<br><br>TRUSTEE'S POST-TRIAL CLOSING ARGUMENT BRIEF |

The Trustee/Plaintiff, Noah G. Hillen, by and through his counsel of record, ANGSTMAN

JOHNSON, provides this Pre-trial Memorandum in the above-captioned adversary proceeding.

TRUSTEE'S POST-TRIAL CLOSING ARGUMENT BRIEF – Page 1

## FACTS SHOWN AT TRIAL

At the trial in this matter, the following facts were established.

1. Between March 17, 2017 and July 31, 2017, the Defendant Lucille Borses Family Trust ("Borses") loaned certain funds to the Debtor. These funds were memorialized in certain Promissory Notes and Deeds of Trust. The Promissory Notes and Deeds of Trust are summarized as follows:

| Name of Document | Dollar amount referenced | Property Referenced | Purported date of document | Date document signed | Maturity date stated in document |
|---|---|---|---|---|---|
| Promissory Note | $75,000.00 | 20018 Silver Spur | 3/17/2017 | 3/18/2017 | 9/17/2017 |
| Deed of Trust | $75,000.00 | 20018 Silver Spur | 3/16/2017 | 4/19/2017 | 11/15/2017 |
| Promissory Note | $75,000.00 | 20018 Silver Spur | 7/27/2017 | 7/27/2017 | 12/27/2017 |
| Deed of Trust | $75,000.00 | 20018 Silver Spur | 7/27/2017 | 8/31/2017 | 2/28/2018 |
| Promissory Note | $50,000.00 | 20172 Silver Spur | 7/27/2017 | 7/31/2017 | 9/30/2017 |
| Deed of Trust | $50,000.00 | 20172 Silver Spur | 7/31/2017 | 8/10/2017 | 10/28/2017 |
| Promissory Note | $50,000.00 | 20093 Silver Spur | 7/31/2017 | 7/31/2017 | 9/30/2017 |
| Deed of Trust | $50,000.00 | 20093 Silver Spur | 7/31/2017 | 8/10/2017 | 10/28/2017 |

2. All of the Deeds of Trust were recorded either the same day they were signed, or the next day.

3. None of the Promissory Notes reference any future advances being made under those notes.

4. None of the Deeds of Trust refer to any specific promissory note containing a future advances clause, or otherwise contains information which would alert a third-party that a future advance was required.

TRUSTEE'S POST-TRIAL CLOSING ARGUMENT BRIEF – Page 2

5. Borses' representative, Shawn Dammarell, testified that no one from Borses reviewed or approved any of the Deeds of Trust prior to their execution or recording.

6. All of the Deeds of Trust were issued by the Debtor, Shiloh Management Services, Inc. ("Shiloh" or the "Debtor").

7. All of the Deeds of Trust contain the following notary acknowledgment:

   On this ___ day of _____ in the year of 2017, before me, the undersigned, a Notary Public in and for said State, personally appeared Nathan Pyles, President of Shiloh Management Services, Inc., known or identified to me to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged to me that he/she/they executed the same.

8. Notwithstanding the notary acknowledgment, all relevant witnesses testified that *none* of the Deeds of Trust were actually acknowledged by Nathan Pyles, the individual that signed the documents on behalf of Shiloh Management Services, Inc. Rather, the notary would simply witness Pyles' signature, without requiring any actual acknowledgment by him that he was signing the document on behalf of Shiloh.

9. The loan funds from Borses were all received and deposited into the Debtor's bank accounts on or within a day of the dates on the Promissory Notes.

10. Three of the Deeds of Trust (the Second 20018 Silver Spur Deed of Trust, the 20172 Deed of Trust, and the 20093 Deed of Trust) were all recorded after August 1, 2017, thus falling within the 90-day pre-petition preference transfer period.

Based on the timing of the Deeds of Trust, the language of the Deeds of Trust, and the lack of any acknowledgments, the Trustee seeks to avoid all of the Deeds of Trust listed above.

**LEGAL ARGUMENT**

1. **The Second 20018 Silver Spur Deed of Trust, the 20172 Deed of Trust, and the 20093 Deed of Trust are avoidable preference transfers of interests in property.**

Section 547(b) of the Bankruptcy Code allows the Trustee to avoid any transfer of an interest of the debtor in property:

(1) to or for the benefit of a creditor;
(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
(3) made while the debtor was insolvent;
(4) made –
 (A) on or within 90 days before the date of the filing of the petition
 …
(5) that enables such creditor to receive more than such creditor would receive if –
 (A) the case were a case under Chapter 7 of this title;
 (B) the transfer had not been made; and
 (C) such creditor received payment of such debt to the extent provided by the provision of this title.

*Id.*

Here, it is undisputed that any funds loaned to the Debtor were provided on or within a day of the date of the respective promissory notes. Consequently, as of the date of the promissory notes, the Debtor was indebted to Borses for the amounts indicated on the promissory notes. It is therefore undisputed that, on the dates these three deeds of trust (the Second 20018 Silver Spur, the 20172 Silver Spur and the 20093 Silver Spur Deeds of Trust – the "Preference Deeds") were effective, Borses was a creditor of the Debtor who was owed an antecedent debt prior to the effective date of the Preference Deeds. Further, it is undisputed that these Preference Deeds were actually signed and recorded by the Debtor during the 90-day pre-petition period. If these Preference Deeds had not been given, Borses would have had unsecured claims for the loans purportedly secured by these Deeds of Trust. What remains in dispute appears to be whether the Preference Deeds were effective prior to their execution by the Debtor.

Under applicable Idaho law, a deed of trust secures an obligation relating to real property owned by the grantor at the <u>date of execution of the deed of trust</u>.  *See, e.g.*, I.C. §§45-1502 and 1503; *see also Liberty Bankers Life Ins. Co. v. Witherspoon, Kelley, Davenport & Toole, P.S.*, 159 Idaho 679 (2016) (recognizing that legal title does not pass to the Trustee pursuant to a deed of trust until the deed of trust is executed and delivered).  This Court has similarly recognized that a deed of trust is not effective, and the interest in the land does not transfer, until the deed of trust is properly executed and delivered.  *See Hymas v. Am. Gen. Fin., Inc. (In re Blair)*, 2000 Bankr. LEXIS 2115 (Bankr. D. Idaho, 2000).  It is undisputed that the Preference Deeds were not executed by the Debtor until August 10 or August 31, 2017 – which is clearly within the preference period.

In its pretrial brief, Borses incorrectly argues that a statutory "safe harbor" defense applies to the Trustee's preference claims.  Borses argues that, pursuant to 11 U.S.C. §547(e)(2), the "substantially contemporaneous exchange" for new value applies so long as the creditor perfects its lien within 30 days.  This defense applies if applicable state law allows a creditor a period of time in which to perfect its lien, and provides that the transfer date of the lien will date back to the execution date, provided the lien is recorded within 30 days.  Here, however, the relevant liens are the Deeds of Trust.  All of the Deeds of Trust were recorded (i.e., perfected) either the same day, or the day after, as being signed.  Borses is equating "perfection within thirty days" with having the lien granted by the Debtor within thirty days.  As argued below, the liens are not effective or valid until the Deed of Trust is signed.  The 30-day time period does not apply to the actual grant of the lien.  Thus, 547(e)(2) does not provide that the grant of lien (i.e., execution of the Deed of Trust) will date back to the date of the promissory note.  Because all of the liens were recorded either the same day or the next day, all of the liens enjoy the protection of §547(e)(2) – meaning the date of the transfer of the lien is the date it was signed by the Debtor.  In all cases, though,

those signature dates were *after* the promissory note had already been signed and the funds provided to the Debtor. Consequently, the §547(e)(2) safe harbor does not prevent the avoidance of the preference transfer.

Additionally, the "substantially contemporaneous exchange" defense applies to new value provided by the creditor. Here, of course, the payments from Borses were all made *prior* to the transfer of the property interest. By nature, then, they could not be "substantially contemporaneous exchanges for new value" – there was no new value; the value had already been provided.

Based on the foregoing, the Trustee should prevail on the preference claims to avoid the Preference Deeds.

2. **The Second 20018 Deed of Trust and/or the second $75,000.00 payment is not protected by any "future advances" clause in the First 20018 Deed of Trust.**

A. **Idaho's future advances statute is not applicable to Deeds of Trust.**

Presumably[1], Borses' argument regarding future advances is based on Idaho Code §45-108, which allows "liens" and mortgages to be immediately effective as security for later obligations. *See* I.C. §45-108. However, the Idaho Supreme Court has recently clarified that §45-108 does not apply to deeds of trust. *See Liberty Bankers Life Ins. Co.*, 159 Idaho at 689-90. According to the Idaho Supreme Court, deeds of trust do not qualify as "liens," as that term is defined in the applicable statute. Here, the documents in question are deeds of trust. Accordingly, the statutory allowance for a future advance clause does not apply to these deeds of trust and any alleged future advance is not protected.

---

[1] Borses' entire argument on this issue consists of one sentence in their pre-trial brief, found on page 8.

TRUSTEE'S POST-TRIAL CLOSING ARGUMENT BRIEF – Page 6

**B. Any future advances clause must first be contained in a valid Deed of Trust, which the First 20018 Deed of Trust is not.**

Further, even if future advances clause in deeds of trust are valid (which the Trustee does not concede), such a clause must be contained in a valid original deed of trust. Here, as argued herein, the First 20018 Deed of Trust was not a valid deed of trust. Without that deed of trust being valid, it could not secure any future advances.

**C. The Second 20018 Deed of Trust was an additional security for a separate loan.**

The First 20018 Deed of Trust was recorded, and allegedly associated with the first promissory note for $75,000.00. That promissory note did not contain any future advances clause. The full $75,000.00 required by the first promissory note was paid contemporaneously with the first promissory note – there was nothing left to advance. On the other hand, the second $75,000.00 was paid pursuant to a separate and distinct promissory note associated with that payment. That second $75,000.00 was also purportedly secured by its own separate security interest – the Second 20018 Deed of Trust. Moreover, the fact that there was a second promissory note and Second 20018 Deed of Trust also defeats the argument that the second payment was secured by the First Deed of Trust under a future advance clause. This second set of documents did not reference, in any fashion, the previous note and deed of trust. *See, e.g., Lundgren v. Nat'l Bank of Alaska*, 742 P.2d 227, 235 (Alaska 1987) (holding "that antecedent debts will not be included within the scope of a dragnet clause unless such debts are specifically identified in the security agreement" and observing that when 'other debt' is separately secured, it "does not refer back to the mortgage or deed of trust containing the dragnet clause" and is considered "evidence that the parties did not intend the dragnet clause to apply to that debt."); *W. Farm Credit Bank v. Auza (In re Auza),* 181 B.R. 63, (B.A.P. 9th Cir. 1995) (applying the "reliance on the security" test and Arizona law to hold that a dragnet clause was unenforceable); *Merchants Nat'l Bank v. Stewart*, 608 So. 2d 1120,

TRUSTEE'S POST-TRIAL CLOSING ARGUMENT BRIEF – Page 7

1126 (Miss. 1992) (holding that "antecedent debts will not be deemed within a dragnet clause unless they are specifically identified in the instrument"); *Dixie AG Supply, Inc. v. Nelson*, 500 So. 2d 1036, 1040 (Ala. 1986) (noting dragnet clauses are "disfavored in Alabama law and must be explicit as to other debts where there is an intention to include those debts by reference in a newly executed security agreement").

> **D. Any testimony from Dammarell regarding the "intent" of the original 20018 loan was improper parol evidence and should not be considered.**

At trial, Borses presented testimony from Dammarell that indicated she had been told the 20018 transaction was meant to be a single loan for $150,000.00, with two separate payments of $75,000.00. However, the actual documents (promissory notes and deeds of trust) do not reference any loan of $150,000.00, nor that there would be a subsequent distribution. Rather, the documents clearly depict two separate loans of $75,000.00 each. Idaho has long subscribed to the parol evidence rule:

> It is the general rule that when a contract has been reduced to writing, which the parties intend to be a complete statement of their agreement, any other written or oral agreements or understandings (referred to in many cases as extrinsic evidence) made prior to or contemporaneously with the written 'contract' and which relate to the same subject matter are not admissible to vary, contradict or enlarge the terms of the written contract.

*Tusch Enters. v. Coffin*, 113 Idaho 37, 44 (1987) *citing Chapman v. Haney Seed Co., Inc.,* 102 Idaho 26, 28 (1981).

Here, this is exactly what Borses is attempting to do with the testimony regarding two $75,000.00 payments. The documents clearly and unambiguously show two separate loan transactions. Without arguing any ambiguity in the loan documents, Borses presented testimony regarding the pre-contract understanding of a single loan transaction. That testimony should not be given any weight as inadmissible parol evidence of the parties' intent.

TRUSTEE'S POST-TRIAL CLOSING ARGUMENT BRIEF – Page 8

For the foregoing reasons, Borses' future advance defense related to the Second 20018 Deed of Trust should be denied or overruled.

3. **All of the Deeds of Trust secure Promissory Notes which do not exist, and are therefore invalid.**

   A. **None of the Deeds of Trust reference existing Promissory Notes.**

In order to secure a debt obligation, the deed of trust must reference the obligation it purports to secure. *See*, *e.g.*, Idaho Code §§ 45-1502 and 1503. A deed of trust must specifically identify the obligation it secures. *See, e.g.* Am Jur 2d Sec 64, p.645. In the case of the Deeds of Trust at issue here, each purports to secure promissory notes which do not exist. For instance, all of the Deeds of Trust purport to secure promissory notes "of even date herewith." The phrase "even date" means "the same date." *See Black's Law Dictionary 635* (9th ed., 2009). Further, several courts have found that "of even date" means a promissory note with the same date. *See, e.g., Beaman v. Head (In re Head Grading Co. Inc.)*, 353 B.R. 122 (Bankr. E.D.N.C., 2006); *Mastro v. Erickson (In re Erickson)*, 2009 Bankr. LEXIS 4531 (9th Cir. BAP, 2009); *Rigby v. Italian Cmty. Hall, Inc. (In re Mastro)*, 2011 Bankr. LEXIS 2059 (9th Cir. BAP, 2011); *In re Canaday*, 376 B.R. 260, 273 (Bankr. N.D. Ind. 2007) . Here, the First 20018 Deed of Trust is dated either March 16, 2017 (the stated date) or April 19, 2017 (the effective date). There is no promissory note to Borses dated either March 16 or April 19, 2017. (The purported promissory note was dated March 17, 2017, and signed March 18, 2017.).

The Second 20018 Deed of Trust was not effective until August 31, 2017, when it was executed. Because the Second 20018 Deed of Trust was not effective until signed, the only "of even date" that could be applicable is the date the deed became effective. There is no promissory note to Borses dated August 31, 2017. (The purported promissory note was dated July 27, 2017.)

TRUSTEE'S POST-TRIAL CLOSING ARGUMENT BRIEF – Page 9

The 20172 Deed of Trust had a stated date of July 31, 2017, but was not effective until August 10, 2017, when it was executed by the Debtor. There is no promissory note to Borses dated either July 31 or August 10, 2017. (The purported promissory note was dated July 27, 2017, and signed July 31, 2018.)

Last, the 20093 Deed of Trust was not effective until August 10, 2017, when it was executed by the Debtor. Because the 20093 Deed of Trust was not effective until signed, the only "of even date" that could be applicable is the date the deed became effective. There is no promissory note to Borses dated August 10, 2017. (The purported promissory note was dated July 31, 2017.)

In addition, all of the promissory notes contain stated maturity dates. All of the Deeds of Trust also contain stated maturity dates for the notes they purport to secure. However, none of the maturity dates in the Deeds of Trust match any maturity date in any of the promissory notes.

For all of these reasons, the Deeds of Trust should be determined to secure debts and/or promissory notes that do not exist and therefore should be extinguished or avoided.

### B. Reformation of the Deeds of Trust is not an available remedy under Idaho state law.

Borses argues, and the Court indicated a preliminary disposition to accept, that an equitable remedy of reformation of the invalid Deeds of Trust is appropriate due to mutual mistake, however such a remedy is not available here. In Idaho, courts do not possess the roving power to rewrite contracts to make them more equitable. *Shawver v. Huckleberry Estates, L.L.C.*, 140 Idaho 354, 365, 93 P.3d 685, 696 (2004). In Idaho, reformation of an instrument may be a proper remedy "when it appears from the evidence … that the instrument does not reflect the intentions of the parties and that such failure is the *product of a mutual mistake, a mistake on the part of all parties to the instrument.*" *Chandler v. Hayden*, 147 Idaho 765, 772 (2009) *citing Collins v. Parkinson*,

96 Idaho 294, 296 (1974) (emphasis added).  A mutual mistake occurs when, at the time of contracting, "both parties shared a misconception regarding a basic assumption or vital fact upon which the bargain is based." *Hughes v. Fisher*, 142 Idaho 474, 482 (2006) *citing Hines v. Hines*, 129 Idaho 847, 853 (1997).  What the parties actually intended is a question of fact and the party alleging the existence of mutual mistake possesses the burden of proving it by clear and convincing evidence.  *Id.*

Here, Borses' witness testified that neither she or anyone else related to Borses reviewed or approved the Deeds of Trust before they were recorded.  Consequently, there could not have been any mutual mistake regarding the language in the Deeds of Trust.  The stated dates in the Deeds of Trust were inserted by the Debtor, without the knowledge of Borses.  Thus, there was no mutual mistake warranting reformation of the Deeds of Trust and applicable Idaho law does not provide that remedy.

>   C. **Even if reformation was available, that remedy was extinguished with the filing of the bankruptcy petition.**

Even if a party at one time may have a right to reform an instrument, that right can be cut off.  The Idaho Supreme Court has noted that "[o]nce the right to have a mistake in a deed rectified is shut off by conveyance to a bona fide purchaser, a grantee from such purchaser is entitled to the same protection."  *Regan v. Jeff D.*, 157 Idaho 758, 763 (2014) *citing* 23 Am. Jur. 2d Deeds § 192 (2013).

In the bankruptcy context, as is the case here, numerous courts have prohibited reformation of an invalid deed of trust when the rights advanced by a trustee as a hypothetical judicial lien creditor or bona fide purchaser intervene under § 544.  *See Warren v. Abreu (In re Skumpija)*, 494 B.R. 822, 824 (Bankr. E.D.N.C. 2013) (holding that a deed of trust held to be invalid because it failed to sufficiently describe or identify the promissory note being secured, could not be reformed

TRUSTEE'S POST-TRIAL CLOSING ARGUMENT BRIEF – Page 11

under § 544 and thus the trustee there could avoid the creditor's lien in the property as a matter of law); *see also Rigby v. Italian Cmty. Hall, Inc. (In re Mastro)*, 2011 Bankr. LEXIS 2059, at *18 (9th Cir. BAP, 2011) (holding that reformation was not an available remedy, in part, because the trustee held title to property as if a bona fide purchaser as of the commencement of the bankruptcy case and such an assertion of status precluded the bankruptcy court from reforming a deed of trust in any event); *Mastro v. Erickson (In re Erickson)*, 2009 Bankr. LEXIS 4531, at *10-11 (9th Cir. BAP 2009) (holding that the equitable doctrine of reformation was not available to a lender in the absence of mutual mistake); *Wolters v. Flagstar Bank FSB*, 429 B.R. 587, 597 (W.D. Mich. 2010) (observing that a court cannot grant reformation of a mortgage when a bankruptcy trustee seeks to avoid reformation without stripping § 544(a)(3) of its significance); *In re Law Developers, LLC*, 404 B.R. 136, 140 (Bankr. E.D.N.C. 2008) (holding that a bank's right to reform an invalid deed of trust was cut off by a hypothetical judicial lien of the date of a bankruptcy petition).

In this case, the Trustee is a bona fide purchaser for value and judicial lien holder as of the commencement of the bankruptcy case. The Trustee was not a party to the Deeds of Trust and had no knowledge of the alleged mutual mistake. Consequently, any reformation rights were cut off as of the petition date. Because reformation rights are not available, and because the Deeds of Trust do not reference existing debts, the Deeds of Trust can be avoided pursuant to 11 U.S.C. §544.

/
/
/
/
/

4. **None of the Deeds of Trust were actually acknowledged as required by applicable Idaho statutes and Idaho Supreme Court precedent.[2]**

The Deeds of Trust all were notarized, using similar notary block language:

State of Idaho, County of _____, ss.

On this _____ day of _____, in the year of [2016 or 2017], before me, the undersigned, a Notary Public in and for said State, personally appeared Nathan Pyles, President of Shiloh Management Services, Inc., known or identified to me to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged to me that he/she/they executed the same.

The Idaho deed of trust statute requires deeds of trust, if recorded, to be acknowledged "in like manner and with like effect as grants [of real property] and conveyances thereof." I.C. § 45-1003. Acknowledgements are usually performed before a notary public. At all relevant times, the notary public was required to affix a certificate of acknowledgment to the deed of trust, indicating certain things (depending on the sort of acknowledgment), but always including an indication of the acknowledgment of the document. *See* I.C. §§ 55-709 (2016 statute); 51-115 (current statute). In order to be recorded, and thereby provide constructive knowledge to other parties of the interest in real property, it must be properly acknowledged. *See* I.C. §55-805. This Court has previously recognized that "if the trust deeds at issue here are not acknowledged, or if the acknowledgments are not valid, they should not have been recorded and are avoidable by Trustee." *Hillen v. Preston Roth IRA, LLC (In re Shiloh Mgmt. Servs., Inc.)*, 2018 Bankr. LEXIS 1774, *8 (Bankr. D. Id., 2018). This maxim is confirmed in Idaho state caselaw. *See Hunt v. Hunt*, 110 Idaho 649, 652

---

[2] The Trustee previously pursued claims based on the *form* of the notary acknowledgment, which this Court denied based on previous Ninth Circuit precedent. The Trustee's appeal related to the form of notary argument have been exhausted and he is no longer pursuing that claim. The notary issue here, however, is different. The remaining notary issue is not based on the *form* of notary block used, but on the *lack* of actual acknowledgment by Pyles before the notary.
.

TRUSTEE'S POST-TRIAL CLOSING ARGUMENT BRIEF – Page 13

(Ct. App., 1985) ("A recorded conveyance which is not acknowledged does not provide constructive notice to subsequent purchasers and mortgagees.").

> In Idaho … there is a presumption of regularity in the performance of official duties by public officers … Notaries are empowered, among other things, to take acknowledgments of the execution of documents and to give certificates therefor. Absent evidence to the contrary, therefore, notaries are presumed to have properly carried out the duties of their office.

*Farm Bureau Fin. Co. v. Carney*, 100 Idaho 745, 750 (1980).

Admittedly, the certificate of acknowledgment used by a notary public "raises a presumption in favor of the truth of every fact recited therein." *Credit Bureau v. Sleight*, 92 Idaho 210, 215 (1968). In order to overcome this presumption, the Trustee must show by clear and convincing evidence that some part of the certificate of acknowledgment is false. *Id.*

> A notary has certain duties in performing his or her functions.
>
> In taking acknowledgments, a notary properly discharges his duty only when the persons acknowledging execution personally appear and the notary has satisfactory evidence, based either on his personal knowledge or on the oath or affirmation of a credible witness, that the acknowledgers are who they say they are and did what they say they did."

*Farm Bureau*, 100 Idaho at 750 (emphasis added).

The Idaho Notary Handbook, published by the Idaho Secretary of State (available at https://sos.idaho.gov/notary/Idaho_Notary_Handbook.pdf), instructs notary officials who are taking acknowledgments to have "the signer verbally acknowledge that the signature is his or hers". *See* p. 11 of the Notary Handbook. Further, the current notary statute defines "acknowledgment" to mean "*a declaration by an individual before a notarial officer* that the individual has signed a record for the purposes states in the record and, if the record is signed in a representative capacity, that the individual signed the record with proper authority and signed it as the act of the individual or entity identified in the record." I.C. §51-102 (emphasis added).

However, if the notarial official fails to comply with these duties the notary certificate may be invalid. "If there exists sufficient evidence which shows that the certificate was false, and not merely incomplete, the presumption of regularity in the performance of notarial acts would disappear." *Farm Bureau*, 100 Idaho at 751. Idaho has recognized that a failure to actually acknowledge the document before the notary is sufficient to make the notary certificate invalid. *See, e.g., Myers v. Eby*, 33 Idaho 266 (1920) (holding that a failure to acknowledge the document before the notary made the mortgage notary certificate a "mere fabrication"); *Credit Bureau v. Sleight*, 92 Idaho 210 (1968). In *Credit Bureau v. Sleight*, the individuals who had signed the mortgage testified that they never appeared before the notary and acknowledged the signature. *Id.* at 212. The notary, on the other hand, testified that he could not recall if the individuals had actually acknowledged the signatures. *Id.* The court held that the "uncorroborated testimony of the party acknowledging the instrument is insufficient to overcome the force of the certificate [of acknowledgment]." *Id.* at 215. However, the court recognized that actual corroborating evidence would be sufficient to overcome the certificate. *Id.* Additionally, citing the *Myers v. Eby* decision, the court determined that "where it is admitted … that the acknowledgment was not taken personally before a notary … then the recording of an instrument which is not entitled to be recorded under the statute because of a defective acknowledgment cannot impart constructive notice." *Id.*

Here, this is exactly what occurred. The Deeds of Trust were each witnessed and notarized by separate notaries public – Lori Fitzgerald and Jayme Miller. The notaries included a certificate, signed by them, which indicated that Pyles had acknowledged the documents. However, at trial Pyles himself as well as both notaries each conclusively testified that, notwithstanding the certificate, there was no actual acknowledgment of the documents by Pyles. Importantly, for any

TRUSTEE'S POST-TRIAL CLOSING ARGUMENT BRIEF – Page 15

of the Deeds of Trust that were signed after July 1, 2017, there also wasn't any acknowledgment of the issues required by the new statute (*see* I.C. § 51-102). Unlike the uncorroborated self-serving testimony in *Sleight*, here there is corroborating testimony from the notaries public themselves, confirming Pyles' testimony that no acknowledgment ever occurred. Moreover, Borses presented no testimony or evidence on these issues and thereby consented to the fact that no actual acknowledgement of the Deeds of Trust ever occurred.

Importantly, the notary certificate itself is not the acknowledgement itself. The certificate is signed by the notary public (not the party to the document), and is used to certify that what the certificate says happened actually happened. However, that certificate can be proved false, as is the case here. There was no actual acknowledgment of the Deeds of Trust. Absent the actual acknowledgment, the Deeds of Trust were not properly notarized. Absent a proper and true notary certificate, the Deeds of Trust were not entitled to be recorded, and therefore do not provide constructive notice to any party.

For these reasons (namely, the effect of a lack of actual acknowledgment of the documents), the Deeds of Trust should all be avoided.

## CONCLUSION

Based on the foregoing, the Trustee asserts that the Deeds of Trust are either preference transfers, invalid as securing debts which do not exist, or invalid due to lack of actual acknowledgments. On any of these bases, the court should enter an order and judgment avoiding the Deeds of Trust.

DATED this 31st day of January, 2020.

                                          /s/ Matt Christensen
                                          MATTHEW T. CHRISTENSEN
                                          Attorney for Plaintiff

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 31ST day of January, 2020, I filed the foregoing TRUSTEE'S POST-TRIAL CLOSING ARGUMENT BRIEF electronically through the CM/ECF system, which caused the following parties to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

| | |
|---|---|
| Matthew T. Christensen | mtc@angstman.com |
| Gery Edson | gedson@gedson.com |

Any others as listed on the Court's ECF Notice.

/s/ Matt Christensen
Matthew T. Christensen