## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF IDAHO

| | |
|---|---|
| In Re:<br><br>**Shiloh Management Services, Inc.,**<br><br>Debtor. | **Bankruptcy Case No. 17-01458-JMM** |
| **Noah G. Hillen,**<br><br>Plaintiff,<br><br>vs.<br><br>**Lucille Borses Family Trust,**<br><br>Defendant. | **Adv. Proceeding No. 19-06003-JMM** |

## MEMORANDUM OF DECISION

**Appearances:**

Matthew T. Christensen, Boise, Idaho, Attorney for Plaintiff.

Gery W. Edson, Boise, Idaho, Attorney for Defendant.

### *Introduction*

The Chapter 7 Trustee ("Plaintiff") commenced this adversary proceeding on

January 17, 2019. Dkt. No. 1. The Defendant, Lucille Borses Family Trust

("Defendant"), filed an answer on March 26, 2019. Dkt. No. 5. Both parties filed pre-trial

memorandums in support of their respective positions. Dkt. Nos. 9 and 14. The trial was

MEMORANDUM OF DECISION − 1

held on January 9, 2020, Dkt. No. 19, and both parties were afforded the opportunity to

submit written closing arguments. Dkt. No. 20. Only the Plaintiff filed a written closing

argument. Dkt. No. 21. Having now considered the record, applicable law, and arguments

of the parties, the Court makes the following findings of fact and conclusions of law.

Rules 7052; 9014.[1]

### *Facts*

On November 1, 2017, an involuntary petition was filed concerning the Debtor,

Shiloh Management Services, Inc. ("Shiloh" or "Debtor"). 17-01458-JMM, Dkt. No. 1.

The Order for relief was entered on December 1, 2017. Dkt. No. 44.  Nathan Pyles

solicited loans from private entities as Shiloh's president. Dkt. No. 9. *Id.* One of these

private entities is the Defendant, for which Shawn Dammarell is the trustee. Dkt. No. 20.

At issue in this adversary proceeding are four promissory notes and deeds of trust. Dkt.

No. 1. The notes are referred to as the First 20018 Note, the Second 20018 Note, the

20172 Note, and the 20093 Note. *Id.* Each note was purportedly secured by a

corresponding deed of trust, referred to as the First 20018 Deed of Trust, the Second

20018 Deed of Trust, the 20172 Deed of Trust, and the 20093 Deed of Trust. *Id.* Mr.

Pyles personally drafted the notes and deeds of trust. Dkt. No. 20. Plaintiff argues these

deeds of trust are avoidable.

---

[1] Unless otherwise indicated, all chapter references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, all Rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037, and all Civil Rule references are to the Federal Rules of Civil Procedure, Rules 1–88. All references to § 586 are to 28 U.S.C. § 586.

MEMORANDUM OF DECISION − 2

A.   First 20018 Note and Deed of Trust

The Defendant agreed to loan Debtor $75,000. Dkt. No. 9. The parties executed the First 20018 Note evidencing the loan. *Id.* Mr. Pyles signed the First 20018 Note on March 18, 2017. Ex. 100. This Note has a stated maturity date of September 17, 2017, and references a "Subject Property" of "20018 Silver Spur." *Id.* The Defendant provided a check for $75,000, and that check was deposited by the Debtor, on July 27, 2017. Ex. 108.

A deed of trust was executed purportedly to secure the First 20018 Note ("First 20018 Deed of Trust"). Ex. 101. This Deed of Trust states that it was "Made this 16 day of March, 2017." *Id.* Mr. Pyles signed it on April 19, 2017, and it was recorded on the same day. *Id.* This Deed of Trust apparently secures a note with a maturity date of November 15, 2017. *Id.* It further provides:

> [F]or the purpose of securing payment of the indebtedness evidenced buy [sic] a promissory note, *of even date herewith*, executed by the Grantor in the sum of Seventy Five Thousand Dollars . . . *and to secure payment of all such further sums as may hereafter be loaned or advanced by the Beneficiary herein to the Grantor herein*, or any or either of them, while record owner of present interest, for any purpose, and of any notes, drafts or other instruments representing such further loans, advances or expenditures together with interest on all such sums of the rate therein provided.

*Id.* (emphasis added)*.

This Deed of Trust references a property "Commonly known as 20018 Silver Spur, Wilder, ID," and references an "Exhibit A," attached thereto, which provides an apparent legal description of the property: "Lot 11, Block 1, Apple Hills Subdivision,

MEMORANDUM OF DECISION − 3

according to the plat thereof, filed in Book 42 of Plats at page(s) 7, records of Canyon County, Idaho." *Id.*

This Deed of Trust was notarized by Jayme Miller. *Id.* Ms. Miller was a contractor that did "odd jobs" for Debtor. Dkt. No. 20. She knew Mr. Pyles personally and knew that he had the authority to sign on behalf of Debtor as president. *Id.* She regularly notarized documents for Debtor, including deeds of trust. *Id.* Mr. Pyles signed every document that Ms. Miller notarized in her presence, and she did not notarize any document that first had Mr. Pyles' signature on it before being presented to her. *Id.*

The notary block on the First 20018 Deed of Trust contains the following language:

> On this 19th day of April in the year 2017, before me, the undersigned, a Notary Public in and for said State, personally appeared Nathan Pyles, President of Shiloh Management Services, Inc known or identified to me to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged to me that he/she/they executed the same.

Ex. 101.

Both Ms. Miller and Mr. Pyles testified that Mr. Pyles did not acknowledge any of the documents before the notary prior to signing.

B.   Second 20018 Note and Deed of Trust

The Parties disagree on the purpose of the Second 20018 Note. Plaintiff argues that this is an independent loan made by the Debtor to the Defendant. Dkt. No. 1. Defendant argues that this is merely a second $75,000 advance or draw related to the

MEMORANDUM OF DECISION − 4

First 20018 Note. Dkt. No. 9. Neither the Second 20018 Note nor the Second 20018 Deed of Trust refer to the First 20018 Note or the First 20018 Deed of Trust.

The Second 20018 Note was prepared and signed by Mr. Pyles on behalf of Debtor on July 27, 2017. Ex. 102. This Note has a face value of $75,000, a maturity date of December 27, 2017, and references a "Subject Property" of "20018 Silver Spur." *Id.*

A deed of trust was executed purportedly to secure the Second 20018 Note ("Second 20018 Deed of Trust"). Ex. 103. This Deed of Trust states that it was "Made this 27 day of July, 2017." *Id.* Mr. Pyles signed it on August 31, 2017, and it was recorded on the same day. *Id.* It apparently secures a note with a maturity date of February 28, 2018. *Id.* This Deed of Trust further provides that it is "for the purpose of securing payment of the indebtedness evidenced buy [sic] a promissory note, *of even date herewith* . . . in the sum of Seventy Five Thousand Dollars . . . ." *Id.* (emphasis added).

This Deed of Trust references a property "Commonly known as 20018 Silver Spur, Wilder, ID," and references an "Exhibit A," attached thereto, and provides an apparent legal description of the property: "Lot 11, Block 1, Apple Hills Subdivision, according to the plat thereof, filed in Book 42 of Plats at page(s) 7, records of Canyon County, Idaho." *Id.*

The notary block on this Deed of Trust contains the following language:

> On this 31st day of August in the year 2017, before me, the undersigned, a Notary Public in and for said State, personally appeared Nathan Pyles, President of Shiloh Management Services, Inc known or identified to me to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged to me that he/she/they executed the same.

MEMORANDUM OF DECISION − 5

Ex. 103.

Ms. Miller also notarized this Deed of Trust. *Id.* As with the First 20018 Deed of

Trust, both Ms. Miller and Mr. Pyles testified that Mr. Pyles did not acknowledge any of

the documents before the notary prior to signing.

C.     20172 Note and Deed of Trust

The Defendant executed a third loan to Plaintiff in the amount of $50,000, referred

to as the 20172 Note. Ex. 104. This Note was prepared by Mr. Pyles on behalf of Debtor

on July 27, 2017, but was signed by Mr. Pyles on July 31, 2017. *Id*. It has a maturity date

of September 30, 2017, and references a "Subject Property" of "20172 Silver Spur." *Id.*

A deed of trust was executed purportedly to secure the 20172 Note ("20172 Deed

of Trust"). Ex. 105. This Deed of Trust states that it was "Made this 31 day of July,

2017." *Id.* Mr. Pyles signed it on August 10, 2017, and it was recorded on August 11,

2017. *Id.* This Deed of Trust apparently secures a note with a maturity date of October

28, 2017, and further provides that it is "for the purpose of securing payment of the

indebtedness evidenced buy [sic] a promissory note, *of even date herewith* . . . in the sum

of Fifty Thousand Dollars . . . ." *Id.* (emphasis added)*.*

This Deed of Trust references a property "Commonly known as 20172 Silver

Spur, Wilder, ID." *Id*. It references an "Exhibit A," attached thereto, and provides an

apparent legal description of the property: "Lot 3, Block 1, Apple Hills Subdivision,

according to the plat thereof, filed in Book 42 of Plats at page(s) 7, records of Canyon

County, Idaho." *Id.*

MEMORANDUM OF DECISION − 6

This Deed of Trust was notarized by Lori Fitzgerald. *Id.* Ms. Fitzgerald worked for Pioneer Title at the time this Deed of Trust was notarized. Dkt. No. 20. Prior to notarizing this document, she had previously notarized several documents for Debtor, including other deeds of trust. *Id.* She had known Mr. Pyles for about five years, and knew that Mr. Pyles had the authority to sign on behalf of Debtor. Mr. Pyles signed every document that Ms. Fitzgerald notarized in her presence. *Id.* She did not notarize any document that first had Mr. Pyles' signature on it before being presented to her. *Id.*

The notary block on this Deed of Trust contains the following language:

> On this 10th day of August in the year 2017, before me, the undersigned, a Notary Public in and for said State, personally appeared Nathan Pyles, President of Shiloh Management Services, Inc known or identified to me to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged to me that he/she/they executed the same.

Ex. 105.

Both Ms. Fitzgerald and Mr. Pyles testified that Mr. Pyles did not acknowledge any of the documents before the notary prior to signing.

D.    20093 Note and Deed of Trust

The Defendant executed a fourth loan to Plaintiff in the amount of $50,000. *Id.* This is referred to as the 20093 Note.[2] Ex. 106. It was prepared and signed by Mr. Pyles

---

[2] Plaintiff did not raise the issue of this Note and Deed of Trust in the original complaint. Dkt. No. 1. However, the parties stipulated to address this Note and Deed of Trust at trial to avoid a separate adversary proceeding. Dkt. No. 20.

MEMORANDUM OF DECISION – 7

on behalf of Debtor on July 31, 2017, and has a maturity date of September 30, 2017. *Id.*

This Note references a "Subject Property" of "20093 Silver Spur." *Id.*

A deed of trust was executed purportedly to secure the 20093 Note ("20093 Deed of Trust"). Ex. 107. This Deed of Trust states that it was "Made this 31 day of July, 2017." *Id.* Mr. Pyles signed this deed of trust on August 10, 2017, and it was recorded on August 11, 2017. *Id.* It apparently secures a note with a maturity date of October 28, 2017. *Id.* This Deed of Trust further provides that it is "for the purpose of securing payment of the indebtedness evidenced buy [sic] a promissory note, *of even date herewith* . . . in the sum of Fifty Thousand Dollars . . . ." *Id.* (emphasis added).

This Deed of Trust references a property "Commonly known as 20093 Silver Spur, Wilder, ID," and references an "Exhibit A," attached thereto, and provides an apparent legal description of the property: "Lot 5, Block 2, Apple Hills Subdivision, according to the plat thereof, filed in Book 42 of Plats at page(s) 7, records of Canyon County, Idaho." *Id.*

The notary block on this Deed of Trust contains the following language:

> On this 10th day of August in the year 2017, before me, the undersigned, a Notary Public in and for said State, personally appeared Nathan Pyles, President of Shiloh Management Services, Inc known or identified to me to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged to me that he/she/they executed the same.

Ex. 107.

MEMORANDUM OF DECISION − 8

Ms. Fitzgerald also notarized this Deed of Trust. *Id.* As with the 20172 Deed of Trust, both she and Mr. Pyles testified that Mr. Pyles did not acknowledge any of the documents prior to signing before the notary.

E.    Discrepancies between the Notes and the Deeds of Trust

Several date discrepancies exist between the Notes and their corresponding Deeds of Trust, specifically that the promissory notes contain different maturity dates than the maturity dates of the Notes that the corresponding Deeds of Trust purport to secure. The Deeds of Trust each purport to secure a promissory note executed "of even date herewith," however as the table below illustrates, none of the trust deeds' corresponding notes were executed the same day as the deeds of trust.

| Document | Execution Date | Recording Date | Maturity Date | Purports to Secure a Note with this Maturity date |
|---|---|---|---|---|
| First 20018 Note | March 18, 2017 | N/A | September 17, 2017 | N/A |
| First 20018 Deed of Trust | April 19, 2017 | April 19, 2017 | N/A | November 15, 2017 |
| Second 20018 Note | July 27, 2017 | N/A | December 27, 2017 | N/A |
| Second 20018 Deed of Trust | August 31, 2017 | August 31, 2017 | N/A | February 28, 2018 |
| 20172 Note | July 31, 2017 | N/A | September 30, 2017 | N/A |

MEMORANDUM OF DECISION – 9

| 20172 Deed of Trust | August 10, 2017 | August 11, 2017 | N/A | October 28, 2017 |
|---|---|---|---|---|
| 20093 Note | July 31, 2017 | N/A | September 30, 2017 | N/A |
| 20093 Deed of Trust | August 10, 2017 | August 11, 2017 | N/A | October 28, 2017 |

Ms. Dammarell was questioned regarding the discrepancies. Dkt. No. 20. She testified she was unaware of the delay between the Notes being signed and the Deeds of Trust being recorded. *Id.* She was also unaware of any changes regarding the maturity dates in the Deeds of Trust and did not know that they did not match the maturity dates in the corresponding Notes. *Id.* She described Mr. Pyles' drafts of the Notes and Deeds of Trust as "sloppy." *Id.* She thought the Deeds of Trust were going to be filed the next day after the corresponding Notes were signed. *Id.*

Mr. Pyles also testified regarding the discrepancies. *Id.* When asked why there were discrepancies in every Note and Deed of Trust, Mr. Pyles replied, "I don't know. I don't have an answer." *Id.* He stated that it might just be a drafting error. *Id.*[3] Mr. Pyles testified that each Note and its corresponding Deed of Trust was intended to be part of the same transaction. *Id.*

Plaintiff commenced this adversary proceeding seeking to avoid all of the Deeds of Trust on the basis that they were improperly recorded for lack of a valid notary

---

[3] Mr. Pyles described the drafting error as a "typo." Dkt. No. 20.

MEMORANDUM OF DECISION – 10

acknowledgement and because they secure promissory notes that do not exist.

Additionally, Plaintiff seeks to avoid the Second 20018 Deed of Trust, the 20172 Deed of

Trust, and the 20093 Deed of Trust as preferences.

### *Analysis and Disposition*

Plaintiff advances several theories in support of his position. First, Plaintiff argues

that all of the deeds of trust at issue are unperfected for lack of a valid notary

acknowledgement, and thus, are avoidable pursuant to § 544. Second, Plaintiff contends

that all the deeds of trust secure promissory notes that do not exist, and as such, are

avoidable pursuant to § 544. Third, Plaintiff argues the Second 20018 Deed of Trust, the

20172 Deed of Trust, and the 20093 Deed of Trust are avoidable preference transfers

pursuant to § 547. In response, Defendant argues that the acknowledgements are proper

and do not have to correspond to the promissory notes precisely. It further disputes that

the deeds of trust are not avoidable as preferential transfers because they were

substantially contemporaneous exchanges prescribed by § 547(c). Finally, Plaintiff seeks

a declaration that the Deeds of Trust are invalid as liens against the properties pursuant to

§558.[4]

---

[4] Plaintiff does not address this claim in either his pre-trial memorandum or his closing argument. Although § 558 is not itself a lien avoidance statute, it does permit the Trustee to assert any defenses available to the Debtor individually. *In re McMurdie*, 448 B.R. 826, 829 n. 6 (Bankr. D. Idaho 2010) ("Section 558 does not present a "lien avoidance" mechanism, similar to § 544(a)(3). Under § 544(a)(3), a trustee may avoid a transfer (such as a deed of trust) if a bona fide purchaser would be able to defeat or take free of the challenged creditor's interest. *See Wells Fargo Home Mort., Inc. v. Richardson* (*In re Brandt*), 434 B.R. 493 (Bankr.W.D. Mich. 2010). If the trustee as a hypothetical bona fide purchaser can

MEMORANDUM OF DECISION − 11

A.    <u>Notary Acknowledgement</u>

Plaintiff argues that Mr. Pyles did not actually acknowledge his signature to the

notaries for each deed of trust, and, as such, the deeds of trust were improperly recorded

and avoidable pursuant to § 544. Dkt No. 14. In *In re Shiloh Mgmt. Servs.*, the trustee

raised a similar, albeit slightly different, argument than the one raised here based on the

form of the acknowledgement rather than the lack of an acknowledgement altogether.[5]

*Hillen v. Preston Roth IRA, LLC (In re Shiloh Mgmt. Servs., Inc.)*, No. 18-06002-JMM,

2018 WL 3025279 (Bankr. D. Idaho June 15, 2018), *aff'd*, 788 F. App'x 500 (9th Cir.

2019). In its prior decision, this Court addressed the trustee's avoidance powers as

follows:

> The Bankruptcy Code provides bankruptcy trustees with broad powers to
> assist them in recovering and administering debtors' assets to benefit
> unsecured creditors in bankruptcy cases. Among these powers are those
> designed to allow the trustee to recover, or "avoid" transfers made by a
> debtor prior to filing for bankruptcy. One of these avoiding powers is the
> so-called "strong-arm power" found in § 544(a). Pursuant to § 544(a)(3), a
> bankruptcy trustee has the power to avoid any transfer that a hypothetical
> bona fide purchaser for value could have avoided under the law of the state

so "avoid" the creditor's interest, he may preserve it for the benefit of the estate under § 551. In contrast, § 558 provides that a "defense" of the debtor may be asserted by the estate, through the trustee.").

[5] The Plaintiff provides the following in his post-trial closing argument:

> The Trustee previously pursued claims based on the *form* of the notary acknowledgment, which this Court denied based on previous Ninth Circuit precedent. The Trustee's appeal related to the form of notary argument have been exhausted and he is no longer pursuing that claim. The notary issue here, however, is different. The remaining notary issue is not based on the *form* of notary block used, but on the *lack* of actual acknowledgment by Pyles before the notary.

Dkt. No. 21.

MEMORANDUM OF DECISION − 12

in which the real property is located. *Chase Manhattan Bank, USA, N.A. v. Taxel (In re Deuel)*, 594 F.3d 1073, 1076 (9th Cir. 2010); *Rainsdon v. Mullen (In re Mullen)*, 402 B.R. 353, 356 (Bankr. D. Idaho 2008).
In the cases before the Court, Trustee contends that because the wrong acknowledgments were used, pursuant to Idaho Code § 55-805, the trust deeds should never have been recorded, and as such, are unperfected. Thus, when Trustee steps into the shoes of a hypothetical bona fide purchaser for value, he may avoid those security interests created. *Cortez v. American Wheel, Inc. (In re Cortez)*, 191 B.R. 174, 178 (9th Cir. BAP 1995) ("An unrecorded, thus unperfected, deed of trust is subject to avoidance by the bankruptcy trustee as a hypothetical lien creditor, pursuant to § 544.").

*Id.* at *6–7. This is the same theory Plaintiff advances here with regard to the lack of actual acknowledgement. Much of the Idaho case law involving certificates of acknowledgement involve the *form* of the notary acknowledgement rather than *the occurrence* of an acknowledgment by the signing party. *See Anderson Land Co. v. Small Bus. Admin. (In re Big River Grain, Inc.)*, 718 F.2d 968 (9th Cir. 1983); *Salladay v. Bowen*, 388 P.3d 577 (Idaho 2017); *Benjamin Franklin Sav. & Loan Ass'n. v. New Concept Realty & Dev., Inc. (In re New Concept Realty & Dev., Inc.)*, 107 Idaho 711, 692 P.2d 355 (Idaho 1984); *Farm Bureau Fin. Co., Inc. v. Carney*, 605 P.2d 509 (Idaho 1980); *Jordan v. Secs. Credit Corp.*, 314 P.2d 967 (Idaho 1957). This Court can find no relevant Idaho case law directly on point.[6] However, this Court finds the case law regarding the form of the acknowledgement to be guiding.

---

[6] "[W]hen a decision turns on applicable state law, and the highest state court has not adjudicated the issue, this Court must determine what decision the highest court would reach if faced with the issue." *Elsaesser v. Raeon (In re Goldberg)*, 235 B.R. 476, 485 (Bankr. D. Idaho 1999) (quoting *Capital Dev. Co. v. Port of Astoria*, 109 F.3d 516, 519 (9th Cir. 1997)). Thus, this Court concludes that, if faced with the exact facts presented here, the Idaho appellate courts would reach the same conclusion as this Court with respect to the notary acknowledgement issue.

MEMORANDUM OF DECISION – 13

"In Idaho a certificate of acknowledgment, complete and regular on its face, raises

a presumption in favor of the truth of every fact recited therein, and the burden of proving

a state of facts which will overcome the probative force of the certificate is upon the party

assailing it." *Credit Bureau of Preston v. Sleight*, 92 Idaho 210, 215, 440 P.2d 143, 148

(Idaho 1968). The burden on the party challenging the certificate of acknowledgement

must be met by clear and convincing evidence. *Id.* Clear and convincing evidence is

"[e]vidence indicating that the thing to be proved is highly probable or reasonably

certain." *In re Adoption of Doe*, 143 Idaho 188, 191, 141 P.3d 1057, 1060 ( Idaho 2006)

(quoting Black's Law Dictionary 577 (7th ed. 1999)). "[T]he uncorroborated testimony of

the party acknowledging the instrument is insufficient to overcome the force of the

certificate." *Credit Bureau of Preston v. Sleight*, 92 Idaho at 215, 440 P.2d at 148 (citing

*Clegg v. Eustace*, 40 Idaho 651, 237 P. 438 (Idaho 1925)).

Idaho Code § 55-805[7] provides:

> Before an instrument may be recorded, unless it is otherwise expressly
> provided, its execution must be acknowledged by the person executing it,
> or if executed by a corporation, by its president or vice president, or
> secretary or assistant secretary, or other person executing the same on
> behalf of the corporation . . . .

An instrument recorded without an acknowledgment or with a defective

acknowledgment is not entitled to be recorded and "cannot impart constructive notice."

---

[7] The Idaho notary statute was amended effective July 2017. This statutory language is present in both the
pre-July 2017 statutes as well as the amended statute.

MEMORANDUM OF DECISION − 14

*Anderson Land Co. v. Small Bus. Admin. (In re Big River Grain, Inc.)*, 718 F.2d at 970

(citing *Credit Bureau of Preston v. Sleight*, 92 Idaho at 215, 440 P.2d at 148). "As such,

if the trust deeds at issue here are not acknowledged, or if the acknowledgments are not

valid, they should not have been recorded and are avoidable by Trustee." *Hillen v.*

*Preston Roth IRA, LLC (In re Shiloh Mgmt. Servs., Inc.)*, 2018 WL 3025279, at *3 (citing

*Matter of Jacobsen*, 30 B.R. 965, 968 (Bankr. D. Idaho 1983)).

> In Idaho, as in most states, there exists a presumption of regularity as to the
> official acts performed by public officers. A notary public is a bonded
> public officer appointed by the Governor. Notaries are empowered to take
> acknowledgments and to give certificates of proof thereof. We begin with a
> presumption that the deed of trust was validly acknowledged.

*Benjamin Franklin Sav. & Loan Ass'n. v. New Concept Realty & Dev., Inc. (In re New*

*Concept Realty & Dev., Inc.)*, 107 Idaho at 712, 692 P.2d at 356 (internal citations

omitted). This Court begins its analysis under this presumption.

In *Benjamin Franklin Sav. & Loan Ass'n. v. New Concept Realty & Dev., Inc. (In*

*re New Concept Realty & Dev., Inc.)*, the Idaho Supreme Court addressed

acknowledgements and certificates of acknowledgement, stating, "In taking an

acknowledgment a notary properly discharges his duty only when the persons executing

the acknowledgment personally appear before him, and when the notary personally

knows, or has proven to him, that those individuals are the same individuals who are

described in, and who executed, the instrument." *Id.* (internal citations omitted).

As noted above, "[t]he Idaho Code provisions on acknowledgement were amended

effective July 2017." *Hillen v. Preston Roth IRA, LLC (In re Shiloh Mgmt. Servs., Inc.)*,

MEMORANDUM OF DECISION − 15

2018 WL 3025279, at *n. 2. The First 20018 Deed of Trust was notarized prior to that

date. Thus, "the Court will measure the adequacy of [the First 20018 Deed of Trust

acknowledgement] under the former statutes." *Id.* However, the other deeds of trust at

issue here were acknowledged after that date, and as such, the Court will measure the

adequacy of those acknowledgements under the amended statutes.

1.    *First 20018 Deed of Trust*

At the time the 20018 Deed of Trust was acknowledged, Idaho Code § 55-707

provided:

> Requisites of acknowledgment.—The acknowledgment of an instrument
> must not be taken, unless the officer taking it knows, or has satisfactory
> evidence from a credible source, that the person making such
> acknowledgment is the individual who is described in, and who executed
> the instrument; or, if executed by a corporation, that the person making
> such acknowledgment is the president or vice president or secretary or
> assistant secretary of such corporation[.]

Idaho Code § 55-707 (repealed 2017).

> The Idaho Supreme Court has elaborated on this statute, stating:

> In taking acknowledgments, a notary properly discharges his duty only
> when the persons acknowledging execution personally appear and the
> notary has satisfactory evidence, based either on his personal knowledge or
> on the oath or affirmation of a credible witness, that the acknowledgers are
> who they say they are and did what they say they did.

*Farm Bureau Fin. Co. v. Carney*, 100 Idaho at 750, 605 P.2d at 514. The court continued:

> [T]he manifest intent of the legislature in requiring a notary public to
> execute a certificate of acknowledgment is to provide protection against the
> recording of false instruments. The Sine qua non of this statutory
> requirement is the involvement of the notary, a public officer in a position
> of public trust. If the notary faithfully carries out his statutory duties, it
> makes little difference whether he remembers to fill in the blanks in the

MEMORANDUM OF DECISION − 16

> certificate. Similarly, if the notary conspires with a forger, or fails to require the personal appearance of the acknowledger, or is negligent in ascertaining the identity of the acknowledger, the statutory scheme is frustrated whether the form is completely filled in or not.
>
> . . .
>
> A notary betrays the public trust when he signs a certificate of acknowledgment with knowledge that the blanks will be filled in later or when he signs a completed certificate of acknowledgment but without requiring the personal appearance of the acknowledgers. Whether the certificate blanks are empty or full is not the significant fact. The key to the statutory safeguard is the integrity of the notary in the proper discharge of notarial duties by requiring the signatories to personally appear before him and acknowledge that they did in fact execute the document.

*Id*.

The Court is unable to locate a statutory definition of "acknowledgement" prior to the July 2017 amendment. However, Black's Law Dictionary defines "acknowledgement" as "A formal declaration made in the presence of an authorized officer, such as a notary public, by someone who signs a document and confirms that the signature is authentic." Black's Law Dictionary (11th ed. 2019). The text of the notary block itself, on each of the deeds of trust at issue here, provides, "[before the Notary] personally appeared Nathan Pyles, President of Shiloh Management Services, Inc known or identified to me to be the person(s) whose name(s) is/are subscribed to the within instrument, and *acknowledged* to me that he/she/they executed the same." (emphasis added). The term "acknowledged" in the notary block suggests that an action must be taken above and beyond the signature itself. It does not support the assertion that the signature alone is the acknowledgement.

MEMORANDUM OF DECISION − 17

The Secretary of State publishes the Idaho Notary Public Handbook. The version of this handbook published before the July 2017 amendments also suggests that the signature itself is not the acknowledgement. LAWRENCE DENNEY, NOTARY PUBLIC HANDBOOK (July 1, 2015), https://www.nationalnotary.org/file%20library/nna/state%20handbooks/idaho-notary-handbook-2016.pdf. In a section titled, "Taking Acknowledgements," the handbook prescribes the requirements when taking acknowledgements. It provides:

> The *acknowledgment of an instrument must not be taken*, unless the officer taking it knows, or has satisfactory evidence from a credible source, that the person *making such acknowledgment* is the individual who is described in, and who executed, the instrument; or, if executed by a corporation, that the person *making such acknowledgment* is the president or vice president or secretary or assistant secretary of such corporation . . . or if executed in a partnership name, that the person *making the acknowledgment* is the partner or one (1) of the partners subscribing the partnership name to such instrument; or, if executed by a limited liability company, that the person *making such acknowledgment* is a manager or member of such limited liability company or other person who executed on its behalf.

*Id.* at 19 (emphasis added).

The statutory language before the July 2017 amendments supports this same conclusion. At the time the First 20018 Deed of Trust was executed, Idaho Code § 55-711 prescribed a corporate acknowledgement and required it to be in substantially the following form:

> State of Idaho, County of _____, on this _____ day of _____, in the year _____, before me (here insert the name and quality of the officer), personally appeared _____ known to me (or proved to me on the oath of _____) to be president, or vice president, or secretary, or assistant secretary, of the corporation that executed the instrument or the person who

MEMORANDUM OF DECISION – 18

executed the instrument on behalf of said corporation, and *acknowledged* to
me that such corporation executed the same.

*Anderson Land Co. v. Small Bus. Admin. (In re Big River Grain, Inc.)*, 718 F.2d at 969

(citing Idaho Code § 55-711) (emphasis added).

The case law is in accord. *See Hillen v. Preston Roth IRA, LLC (In re Shiloh*

*Mgmt. Servs., Inc.)*, 2018 WL 3025279, at *3 (citing *Matter of Jacobsen*, 30 B.R. 965 at

968 ("As such, if the trust deeds at issue here *are not acknowledged*, or if the

acknowledgments are not valid, they should not have been recorded and are avoidable by

Trustee.") (emphasis added); *Benjamin Franklin Sav. & Loan Ass'n. v. New Concept*

*Realty & Dev., Inc. (In re New Concept Realty & Dev., Inc.)*, 107 Idaho at 712, 692 P.2d

at 356 ("In *taking an acknowledgment* a notary properly discharges his duty only when

the persons *executing the acknowledgment* personally appear before him, and when the

notary personally knows, or has proven to him, that those individuals are the same

individuals who are described in, and who executed, the instrument . . . Notaries are

*empowered to take acknowledgments* and to give certificates of proof thereof.")

(emphasis added); *Farm Bureau Fin. Co. v. Carney*, 100 Idaho at 750, 605 P.2d at 514

("The key to the statutory safeguard is the integrity of the notary in the proper discharge

of notarial duties by requiring the signatories to personally appear before him and

*acknowledge that they did in fact execute the document*. . . . In *taking acknowledgments*, a

notary properly discharges his duty only when the persons acknowledging execution

personally appear and the notary has satisfactory evidence . . . that the acknowledgers are

who they say they are and *did what they say they did*.") (emphasis added).

MEMORANDUM OF DECISION – 19

Accordingly, this Court concludes that the signature, on its own, is not the acknowledgement. The statutes, case law, and Idaho Notary Public Handbook each view and treat the acknowledgement as separate from the signature and cannot be conflated with the signing and identifying portions of the process. This interpretation respects the Idaho Legislature's intent that "requiring a notary public to execute a certificate of acknowledgment is to provide protection against the recording of false instruments." *Farm Bureau Fin. Co. v. Carney*, 100 Idaho 745 at 750, 605 P.2d at 514. Here, based on the testimony of those involved, the notaries clearly treated the acknowledgement as part of the identification and signature portions, and not independent thereof.

The text of the notary block itself on the First 20018 Deed of Trust provides, "[before the Notary] personally appeared Nathan Pyles, President of Shiloh Management Services, Inc known or identified to me to be the person(s) whose name(s) is/are subscribed to the within instrument, and *acknowledged* to me that he/she/they executed the same." (emphasis added). However, this statement conflicts with the testimony of Ms. Miller and Mr. Pyles as to what actually occurred.

The testimony of Ms. Miller confirms that no acknowledgements were taken. Dkt. No. 20. Ms. Miller notarized the First and Second 20018 Deeds of Trust. At trial she was asked, "Did you ever have [Pyles] acknowledge any deeds of trust before signing them?" Ms. Miller replied, "No." She further testified that is how she would have notarized both the First and Second 20018 Deed of Trust—that there was no acknowledgement taken.

MEMORANDUM OF DECISION − 20

Mr. Pyles also testified regarding the process of notarization. He was asked, "Did the notary do anything else other than witness you sign the document and stamp it?" Mr. Pyles replied, "No." He was then asked, "Did Ms. Miller or Ms. Fitzgerald ever ask you to swear or acknowledge any of the documents?" Mr. Pyles replied, "No." Again, he was asked, "They just witnessed your signature, correct?" Mr. Pyles replied, "Yes, correct." He further testified that was the process for all of the deeds of trust that were notarized.

The record before the Court, including the testimony of Ms. Miller and Mr. Pyles, demonstrates that no acknowledgement was made. Although "the uncorroborated testimony of the party acknowledging the instrument is insufficient to overcome the force of the certificate," *Credit Bureau of Preston v. Sleight*, 92 Idaho at 215, 440 P.2d at 148, such is not the case here; both Ms. Miller and Mr. Pyles clearly and unequivocally testified that no acknowledgements were taken. Thus, this Court finds that the Plaintiff has met his burden by clear and convincing evidence that the First 20018 Deed of Trust was not properly notarized due to the lack of actual acknowledgement by Mr. Pyles to Ms. Miller.[8]

---

[8] Idaho law recognizes that the form of the certificate of acknowledgement must be in substantial compliance with the prescribed form contained in the Idaho statutes. *See* Idaho Code § 55-709 (repealed 2017); Idaho Code § 55-805; *Anderson Land Co. v. Small Bus. Admin. (In re Big River Grain, Inc.)*, 718 F.2d at 970 ("The statutes and cases require "substantial" but not literal compliance with the respective forms."). Here, the question is not whether the parties substantially complied with the form of the notary acknowledgement, but as noted above, the question presented here is whether the parties actually completed an acknowledgement in any form.

MEMORANDUM OF DECISION − 21

"[I]f the trust deeds . . . are not acknowledged, or if the acknowledgments are not valid, they should not have been recorded and are avoidable by Trustee [under § 544(a)]." *Hillen v. Preston Roth IRA, LLC (In re Shiloh Mgmt. Servs., Inc.)*, 2018 WL 3025279, at *3 (citing *Matter of Jacobsen*, 30 B.R. at 968). For the reasons stated above, the First 20018 Deed of Trust at issue here was not properly acknowledged. As such, it should not have been recorded and, thus, is unperfected. Accordingly, the First 20018 Deed of Trust is avoidable by the Trustee.

2.    *The Second 20018 Deed of Trust, 20172 Deed of Trust, and the 20093 Deed of Trust*

These deeds of trust were executed after the July 2017 amendments to Idaho's notary statutes. Despite the statutory amendments, however, the same analysis applied to the First 20018 Deed of Trust also applies to these later trust deeds. In fact, the amendments only strengthen that analysis.

The amended statutory language is in accord with this Court's conclusion that an acknowledgement requires something more than the signature itself. The short form certificates prescribed in the amended Idaho Code § 51-116(2), include a line that states, "This record was *acknowledged* before me on [Date] by [Name(s) of individuals]." (emphasis added). Idaho Code § 51-105(1) emphasizes the act of identifying and signing distinct from the act of taking an acknowledgment:

> A notary public who *takes an acknowledgment* of a record shall determine, from personal knowledge or satisfactory evidence of the identity of the individual, that the individual appearing before the notary public and *making the acknowledgment* has the identity claimed and that the signature on the record is the signature of the individual.

MEMORANDUM OF DECISION − 22

*See also* Idaho Code § 55-805 ("Before an instrument may be recorded, unless it is otherwise expressly provided, its execution *must be acknowledged* by the person executing it, or if executed by a corporation, by its president or vice president . . . .") (emphasis added); Idaho Code § 51-105(1) ("A notary public who *takes an acknowledgment* of a record shall determine, from personal knowledge or satisfactory evidence of the identity of the individual, that the individual appearing before the notary public and *making the acknowledgment* has the identity claimed and that the signature on the record is the signature of the individual.") (emphasis added); Idaho Code § 51-102(5) ("[Notarial act] includes *taking an acknowledgment*, administering an oath or affirmation, taking a verification on oath or affirmation, witnessing or attesting a signature, certifying or attesting a copy, and noting a protest of a negotiable instrument.") (emphasis added).

Perhaps most notable of all, the July 2017 amendments include the addition of a definition of "acknowledgement" where one did not exist before. Idaho Code § 51-102, effective July 1, 2017, provides:

> "Acknowledgment" means a declaration by an individual before a notarial officer that the individual has signed a record for the purpose stated in the record and, if the record is signed in a representative capacity, that the individual signed the record with proper authority and signed it as the act of the individual or entity identified in the record.

Idaho Code § 51-102(1).

In addition, the Idaho Notary Public Handbook was revised to reflect the July 2017 notary amendments. LAWRENCE DENNEY, NOTARY PUBLIC HANDBOOK (Revised

MEMORANDUM OF DECISION − 23

October 2018), https://sos.idaho.gov/Notary/Idaho_Notary_Handbook.pdf.[9] The revised

handbook also suggests that the signature itself is not the acknowledgement, and in fact,

makes the requirement even more clear. In a section titled, "Taking Acknowledgements,"

the handbook prescribes the actions that must be performed when taking

acknowledgements. It provides:

> In *taking an acknowledgment*, the notary must do the following:
>
> • Require the personal appearance of the signer
> • Review the document to determine the type of document and type of notarial act required
> • Identify the signer as the person who is supposed to sign the document
>
> Verify that the signature on the document is the signer's, either by watching them sign the document, or if it has already been signed, by comparing the

---

[9] Idaho Code § 51-127 permits the Idaho Secretary of State to "adopt rules to implement" the Revised Uniform Law on Notarial Acts. By statute, the rules may include but are not limited to the following:

> (a) Prescribing the manner of performing notarial acts regarding tangible and electronic records;
> (b) Including provisions to ensure that any change to or tampering with a record bearing a certificate of a notarial act is self-evident;
> (c) Including provisions to ensure integrity in the creation, transmittal, storage or authentication of electronic records or signatures;
> (d) Prescribing the process of granting, renewing, conditioning, denying, suspending or revoking a notary public commission and assuring the trustworthiness of an individual holding a commission as notary public;
> (e) Including provisions to prevent fraud or mistake in the performance of notarial acts

Idaho Code § 51-127. The revised October 2018 handbook states, "This handbook was designed to provide information to current and prospective notaries public in the State of Idaho in order to increase understanding of the powers and duties of the office. . . . Any statements by the office of the Secretary of State regarding notaries or notarial acts are not intended as legal advice and should not be construed as such. If you have specific legal questions regarding your acts or conduct as a notary, the Secretary of State's office urges you to seek professional legal advice." LAWRENCE DENNEY, NOTARY PUBLIC HANDBOOK (Revised October 2018), https://sos.idaho.gov/Notary/Idaho_Notary_Handbook.pdf.

MEMORANDUM OF DECISION − 24

signature on the document to one on the signer's ID and the signature made by the signer in the notary's journal[.]

*Have the signer verbally acknowledge that the signature is his or hers.* Complete the notarial certificate[.]

*Id.* at 11 (emphasis added).

As can be seen, the handbook now formally lists the acknowledgment as a separate step. Accordingly, this Court finds that the signature, on its own, does not supply the necessary acknowledgement under the amended statutes. The notarial statutes, as amended, treat the acknowledgement as separate from the act of signing. The complete process requires several separate steps: 1) appearance of the individual before the notary public, 2) identification of the individual by the notary public, 3) acknowledgement of the document by the individual to the notary public, and 4) signature of the individual. All steps are necessary, and one cannot serve as a substitute for another.

In the case at bar, the text of the notary block on each of the deeds of trust at issue provides, "[before the Notary] personally appeared Nathan Pyles, President of Shiloh Management Services, Inc known or identified to me to be the person(s) whose name(s) is/are subscribed to the within instrument, and *acknowledged* to me that he/she/they executed the same." (emphasis added). However, this conflicts with the testimony of Ms. Miller, Ms. Fitzgerald, and Mr. Pyles.

The testimony of both Ms. Miller and Ms. Fitzgerald indicates that no acknowledgements were taken. Dkt. No. 20. Ms. Miller notarized the Second 20018

MEMORANDUM OF DECISION − 25

Deed of Trust. At trial, she testified that she did not have Mr. Pyles acknowledge the documents in her presence before he signed them. *Id.*

Ms. Fitzgerald notarized the 20172 Deed of Trust and the 20093 Deed of Trust. When describing the notary process for these deeds of trust, she stated, "[Mr. Pyles] would come in, have a seat, say can you notarize another one, and sign it and I would notarize."[10] On direct examination, Ms. Fitzgerald was asked, "Did you ever require [Mr. Pyles] to acknowledge the document that he was signing?" Ms. Fitzgerald replied "No." She was then asked, "As long as he signed the document in front of you, that's what you required and that's what you notarized?" She replied, "Yes."

Mr. Pyles also testified about the process of notarization. When describing the notary process that took place when executing these deeds of trust, he stated, "I just would ask them to notarize the document. And then sometimes have it recorded." Mr. Pyles was asked, "Did the notary do anything else other than witness you sign the document and stamp it?" Mr. Pyles replied, "No." He was then asked, "Did Ms. Miller or Ms. Fitzgerald ever ask you to swear or acknowledge any of the documents?" Mr. Pyles replied, "No." Again, he was asked, "They just witnessed your signature, correct?" to which Mr. Pyles replied, "Yes, correct."

---

[10] It is unclear from the testimony what Ms. Fitzgerald is referring to when she refers to the documents as "another one."

MEMORANDUM OF DECISION − 26

Based on the record presented, including the testimony of Ms. Miller, Ms. Fitzgerald, and Mr. Pyles, this Court finds that Plaintiff has established by clear and convincing evidence that no acknowledgement was made separate from the signature itself with respect to these Deeds of Trust.[11] Here, as with the First 20018 Deed of Trust, the notaries clearly treated the acknowledgement as part of the identification and signature portions, and thus falls short of the statutory requirements. However, the Court's inquiry does not end here.

Idaho Code § 51-126[12] was added by the Idaho Legislature in July 2017. This statute includes a broad savings clause enacted to protect a notarial act due to a mistake. That statute provides, "Except as otherwise provided in section 51-104(2), Idaho Code, the failure of a notary public to perform a *duty* or meet a requirement specified in this

---

[11] In this holding, the Court is not specifying any particular act that a party must do when completing a notary acknowledgement. It is clear here, however, that even the most basic elements of an acknowledgement are lacking. One notary testified that Mr. Pyles asked her to notarize "another one," giving no indication that she had knowledge of the type of document it was that she was notarizing. This could mean another deed of trust, or it could mean something else.  Mr. Pyles testified that he would ask the notaries to notarize "the document," again, giving no indication that the notaries had knowledge of the type of document it was that they were notarizing. The Court will not fill in these gaps with inferences. Without first obtaining this information from the acknowledger, the notary could not have satisfactory evidence "that the individual has signed a record for the purpose stated in the record." Idaho Code § 51-102(1).

[12] The addition of this section seemingly codifies a "national trend toward a liberal rather than technical interpretation of notary acknowledgements" that has been recognized in Idaho and by this Court. *See Anderson Land Co. v. Small Bus. Admin.* (*In re Big River Grain, Inc.*), 718 F.2d at 970 (citing *Northwestern & Pacific Hypotheek Bank v. Rauch*, 5 Idaho 752, 51 P. 764 (1898); *see also Hillen v. Triple B, LLC, et al* (*In re Shiloh Mgmt. Servs., Inc.*), 788 F. App'x 500 (9th Cir. 2019) ("[W]e note that Idaho amended its statutes in 2017 and significantly relaxed the rigid formal requirements for certificates of acknowledgment."). The addition of this statute providing for a more liberal interpretation of notary acknowledgement supports this Court's interpretation of the pre-July 2017 statutes requiring a more stringent interpretation.

MEMORANDUM OF DECISION − 27

chapter does not invalidate a notarial act performed by the notary public."[13] Idaho Code § 51-126 (emphasis added). As explained above, taking an acknowledgement is one such duty. In *Benjamin Franklin Sav. & Loan Ass'n. v. New Concept Realty & Dev., Inc. (In re New Concept Realty & Dev., Inc.)*, the Idaho Supreme Court stated, "In *taking an acknowledgment* a notary properly discharges his *duty* only when the persons executing the acknowledgment personally appear before him, and when the notary personally knows, or has proven to him, that those individuals are the same individuals who are described in, and who executed, the instrument." 107 Idaho at 712, 692 P.2d at 356 (emphasis added). Accordingly, thanks to the operation of the savings clause, Ms. Miller's and Ms. Fitzgerald's failure to acquire an acknowledgement separate and distinct from the signature itself does not automatically invalidate the certificates of acknowledgement with respect to the Second 20018 Deed of Trust, the 20172 Deed of Trust, and the 20093 Deed of Trust.

On the other hand, that same statute expressly does not foreclose attacks on the validity of the notarized documents through other avenues. Idaho Code § 51-126 states, "The validity of a notarial act under this chapter does not prevent an aggrieved person from seeking to invalidate the record or transaction that is the subject of the notarial act or from seeking other remedies based on law of this state other than this chapter or law of

---

[13] Idaho Code § 51-104(2) provides, "(2) A notary public may not perform a notarial act with respect to a record to which the notary public or the notary public's spouse is a party, or in which either of them has a direct beneficial interest. A notarial act performed in violation of this subsection is voidable."

MEMORANDUM OF DECISION – 28

the United States." Idaho Code § 51-126. Thus, just because an improperly

acknowledged document is saved by Idaho Code § 51-126, Plaintiff is not prevented from

invalidating the notarized document or record under a different chapter of Idaho law.

Idaho Code § 55-805 is a separate chapter of Idaho law that pertains to recording

transfers. It states, "Before an instrument may be recorded, unless it is otherwise

expressly provided, its execution must be acknowledged by the person executing it . . . or

the execution must be proved and the acknowledgment or proof, certified in substantially

the manner prescribed by chapter 1, title 51, Idaho Code[.]" Idaho Code § 55-805.[14] As

---

[14] The Court is aware that the statutes at issue here seem circular: Under Idaho Code § 51-126 , the plaintiff is entitled to invalidate the certificate of acknowledgement based on another statute, yet the Idaho recording statute simply refers back to the notary statute requirements and, seemingly, as long as the acknowledgements comply with the amended notary statutes, the acknowledgements will also comply with the recording statute. Additionally, the Idaho case law is scant on the issue since the amendments were so recent. The logic makes little sense: Idaho Code § 55-805 requires a deed to be acknowledged before recording. Yet the purpose of recording, according to Idaho case law, is to impart notice to others. *See Anderson Land Co. v. Small Bus. Admin. (In re Big River Grain, Inc.)*, 718 F.2d at 970. Without notice, the recording is void. However, in many cases, as with those at issue here, the conveyances *were actually* recorded despite the invalid acknowledgement. Thus, parties *were* put on notice (the very purpose of recording) despite the invalid acknowledgement. Yet, Idaho case law still deems the deed invalid if the acknowledgement is incorrect for lack of proper notice. This seems to have been recognized by Idaho Supreme Court Justice Stephen Bistline in his concurrence in *Benjamin Franklin Sav. & Loan Ass'n. v. New Concept Realty & Dev., Inc. (In re New Concept Realty & Dev., Inc.)*, 107 Idaho at 714, 692 P.2d at 358. He stated:

> The argument as I understand it . . . is that because of the alleged faulty acknowledgement, [the conveyance] was not entitled to be recorded—from which by application of a fiction it is then said in the eyes of the law not to have been recorded. It is I.C. § 55–805 which requires acknowledgement by the person executing a document as a prerequisite to recording. It does not require a perfect acknowledgement. It does not declare that a less than perfect acknowledgement nullifies the constructive notice which flows from recording. This Court over 70 years ago in *Harris v. Reed*, 21 Idaho 364, 121 P. 780 (1912), accepting authority from other jurisdictions, held that "The recording of an instrument which is not entitled under the statute to be recorded cannot import constructive notice to anyone." 21 Idaho at 370, 121 P. at 782. Such to my mind ignored

MEMORANDUM OF DECISION − 29

stated above, the failure to acquire an acknowledgement separate and distinct from the

signature itself does not invalidate the certificates of acknowledgement under the broad

savings clause of Idaho Code § 51-126. Accordingly, recordation was proper and these

Deeds of Trust may not be avoided by the Trustee under § 544(a)(3).

B.      <u>The First and Second Note and Deeds of Trust are independent transactions</u>

The parties dispute the purpose of the First and Second 20018 Notes and Deeds of

Trust. Plaintiff argues that each loan was made independently of each other, while

Defendant argues that the Second 20018 Note was merely an advance or second draw

made pursuant to the First 20018 Note's future advances clause.

Under Idaho law, mortgages can secure future advances "up to, but only up to, the

total sum stated on the face of the mortgage." *Biersdorff v. Brumfield*, 93 Idaho 569, 573,

468 P.2d 301, 305 (Idaho 1970) (citing *Savings & Loan Soc. v. Burnett*, 106 Cal. 514, 39

P. 922 (1895); *Wardman v. Iseman*, 99 Pa. Super. 551 (1930)). This doctrine has been

long established under Idaho case law. *See Weiser Loan & Tr. Co. v. Comerford*, 41

Idaho 172, 238 P. 515, 516 (Idaho 1925) ("The rule is well settled that it is not necessary

that a mortgage express on its face that it is given to secure future advances; it may

describe as the debt secured a specific sum, leaving the true nature of the transaction to

_____

reality. What has been recorded has been recorded; what is seen of record is seen of
record.

107 Idaho at 714, 692 P.2d at 358. However, while the arguments made in the concurrence contain
important considerations, especially in light of the new savings clause, this Court will follow the current
Idaho precedent.

MEMORANDUM OF DECISION – 30

be shown by parol proof, and it will then be security for a debt including future advances, to the amount named, if such is the agreement of the parties.").

However, Idaho courts have expressly distinguished between deeds of trust and mortgages. *See Frazier v. Neilsen & Co.*, 115 Idaho 739, 741, 769 P.2d 1111, 1113 (Idaho 1989). The *Frazier* court held:

> [The Idaho Trust Deeds Act] sets forth in detail the procedures which must be followed in foreclosures of deeds of trust, and effectively overruled *Brown v. Bryan* [6 Idaho 1, 51 P. 995 (1898)]. When the legislature first enacted these laws in 1957, and in its subsequent amendments, it made the act applicable only to deeds of trust. Because the legislature has created a separate scheme for deeds of trust, the rationale for *Brown v. Bryan*, that mortgages and deeds of trust are functional equivalents, is undercut. The legislature obviously intended separate treatment; therefore, they are not functionally the same.

*Id*. This separate treatment is not necessarily applicable to future advances. Despite this distinction in *Frazier*, Idaho courts have subsequently applied mortgage case law to deeds of trust. Specifically, when determining whether a deed of trust can secure future advances, the Idaho Supreme Court observed:

> Under Idaho's recording statutes, every conveyance of real property acknowledged or proved, and certified and recorded as prescribed by law, is constructive notice of its contents to subsequent purchasers and mortgagees from the time it is filed. I.C. § 55–811. Constructive notice imparted from the record, therefore, is a matter of statute. Included among those put on notice by a conveyance is a beneficiary of a deed of trust, who is treated as a mortgagee. *See Security Pacific Finance Corp. v. Bishop*, 109 Idaho 25, 704 P.2d 357 (Ct. App. 1985). *See also Wylie v. Patton*, 111 Idaho 61, 65, 720 P.2d 649, 653 (Ct. App. 1986) (holding constitutional requirements of notice due a mortgagee also owed to beneficiary of deed of trust).
>
> There is a presumption that a mortgage secures the sum expressed therein, and the mortgagee bears the burden of proof on his claim that the mortgage covers a greater amount than the sum stated. 59C.J.S. Mortgages § 146, p. 189. This [c]ourt has held: "Where a mortgage is given to secure a

MEMORANDUM OF DECISION − 31

> specific debt named, the recorded, stated sum of the mortgage is sufficient notice of that indebtedness and will not be extended beyond the amount on the face of the mortgage." *Biersdorff v. Brumfield*, 93 Idaho 569, 572, 468 P.2d 301, 304 (1970).

*Kalange v. Rencher*, 136 Idaho 192, 195, 30 P.3d 970, 973 (Idaho 2001) (holding that the stated sum of the deed of trust will not be extended beyond the amount on the face of the deed of trust). Accordingly, a deed of trust can secure future advances, but only up to the total sum stated in the deed of trust. Any amount loaned above the total sum is unsecured.

Here, Defendant is in a unique position because it argues that the Second 20018 Note was a second advance made pursuant to the First 20018 Note and Deed of Trust. Yet, the parties executed the Second 20018 Deed of Trust purportedly to secure the Second 20018 Note, and the Court can locate no alternate purpose for that second trust deed. Given those facts, why would the Defendant look to the First 20018 Deed of Trust to secure the Second 20018 Note? Presumably, Defendant's reliance on the First 20018 Deed of Trust as security for the Second 20018 Note is based on preference law under § 547(b), with its 90-day window.[15] However, for reasons stated above, the First 20018 Deed of Trust is invalid because of the lack of proper notary acknowledgement. Notwithstanding that holding, under *Kalange*, the First 20018 Deed of Trust, even if valid, could only secure up to $75,000. Thus, if in fact the First 20018 Deed of Trust secured the Second 20018 Note pursuant to the Defendant's argument, not only would

---

[15] *See discussion infra*.

MEMORANDUM OF DECISION − 32

the Second 20018 Note be unsecured because the First 20018 Deed of Trust could only

secure up to $75,000, but it would also be unsecured because the First 20018 Deed of

Trust was invalidly acknowledged and recorded.

"Under Idaho's recording statutes, every conveyance of real property

acknowledged or proved, and certified and recorded as prescribed by law, is constructive

notice of its contents to subsequent purchasers and mortgagees from the time it is filed."

*Kalange v. Rencher*, 136 Idaho at 195, 30 P.3d at 973 (citing Idaho Code § 55–811).

"Constructive notice imparted from the record, therefore, is a matter of statute." *Id.* The

*Kalange* court continued:

> It has long been established that a purchaser is charged with every fact
> shown by the records and is presumed to know every other fact which an
> examination suggested by the records would have disclosed. *Cordova v.
> Hood*, 17 Wall. 1, 84 U.S. 1, 21 L. Ed. 587 (1873); *Northwestern Bank v.
> Freeman*, 171 U.S. 620, 19 S. Ct. 36, 43 L. Ed. 307 (1898). One claiming
> title to lands is chargeable with notice of every matter affecting the estate,
> which appears on the face of any recorded deed forming an essential link in
> his chain of title, and also with notice of such matters as might be learned
> by inquiry which the recitals in such instruments made it a duty to pursue.
> *Glover v. Brown*, 32 Idaho 426, 184 P. 649 (1919).

136 Idaho at 195–96, 30 P.3d at 973–74. Again, "[t]he primary purpose of the recording

statutes is to give notice to others that an interest is claimed in real property, and thus

give protection against bona fide third parties who may be dealing in the same property.

*Matheson v. Harris*, 98 Idaho 758, 761, 572 P.2d 861, 864 (Idaho 1977). In *Imig v.

McDonald*, the Idaho Supreme Court stated:

> One who relies for protection upon the doctrine of being a bona fide
> purchaser must show that at the time of the purchase he paid a valuable
> consideration and upon the belief and the validity of the vendor's claim of

MEMORANDUM OF DECISION – 33

> title without notice, actual or constructive, of any outstanding adverse rights
> of another.

77 Idaho 314, 318–19, 291 P.2d 852, 855 (Idaho 1955). "Further, one who purchases property with sufficient knowledge to put him, or a reasonably prudent person, on inquiry is not a bona fide purchaser." *Id.* For the purposes of avoidance actions under § 544, of which Plaintiff argues in favor in this case, Plaintiff, as trustee, acts as a bona fide purchaser. *See* § 544.

Here, as stated above, the Second 20018 Deed of Trust was properly acknowledged thanks to the savings clause in the amended statute. Thus, it was entitled to be recorded. The recorded Second 20018 Deed of Trust provided notice to any subsequent bona fide purchaser of an encumbrance on the property. The Plaintiff here acknowledges, and in fact argues, that the Second 20018 Deed of Trust was additional security for a separate loan ("The Second 20018 Deed of Trust was additional security for a separate loan. . . . This second set of documents did not reference, in any fashion, the [First 20018 Note and Deed of Trust]."). Dkt. No. 21. This Court agrees. One examining the recorded information has no reason to believe that the Second 20018 Deed of Trust is not what it purports to be: security for the indebtedness of $75,000. *See Kalange v. Rencher*, 136 Idaho at 196, 30 P.3d at 974. In fact, if it does not secure the Second 20018 Note, what does it secure? The First and Second 20018 Notes were loans secured by their own separate deeds of trust.

C.     The Deeds of Trust sufficiently identify the underlying obligations they secure

MEMORANDUM OF DECISION − 34

Plaintiff next argues that the deeds of trust are invalid because they purportedly secure promissory notes which do not exist.[16] Each deed of trust contains the following language: "[F]or the purpose of securing payment of the indebtedness evidenced buy [sic] a promissory note, *of even date herewith*, executed by the Grantor in the sum of . . . ." (emphasis added). The phrase "of even date" "is sometimes used in one instrument to refer to another instrument with the same date, esp. when both relate to the same transaction (as a deed and a mortgage)." Black's Law Dictionary (11th ed. 2019). The relevant dates on the notes and deeds of trust are as follows:

| Document | Execution Date | Recording Date | Maturity Date | Purports to Secure a Note with this Maturity date |
|---|---|---|---|---|
| First 20018 Note | March 18, 2017 | N/A | September 17, 2017 | N/A |
| First 20018 Deed of Trust | April 19, 2017 | April 19, 2017 | N/A | November 15, 2017 |
| Second 20018 Note | July 27, 2017 | N/A | December 27, 2017 | N/A |
| Second 20018 Deed of Trust | August 31, 2017 | August 31, 2017 | N/A | February 28, 2018 |
| 20172 Note | July 31, 2017 | N/A | September 30, 2017 | N/A |
| 20172 Deed of Trust | August 10, 2017 | August 11, 2017 | N/A | October 28, 2017 |

---

[16] Having decided that the First 20018 Deed of Trust is invalid, the Court will nevertheless address the merits of this argument regarding that document.

MEMORANDUM OF DECISION − 35

| 20093 Note | July 31, 2017 | N/A | September 30, 2017 | N/A |
| 20093 Deed of Trust | August 10, 2017 | August 11, 2017 | N/A | October 28, 2017 |

The Plaintiff argues that, because the Deeds of Trust purport to secure obligations that were created the same date the deeds of trust were dated, and no promissory notes were executed on those dates, the Deeds of Trust are invalid because they secure obligations which do not exist.

Thus, the issue before this Court is whether the Deeds of Trust sufficiently identify the underlying obligations. The Court concludes that conflicting maturity dates do not render the deed of trust nondescriptive of the note. Here, as illustrated above, the Notes all have maturity dates; the Deeds of Trust purport to have "even date," i.e., the same date, as the respective notes. But that is not the case. Each Deed of Trust contains identical language, except as to the dates and the amounts secured:

> [F]or the purpose of securing payment of the indebtedness evidenced buy [sic] a promissory note, of even date herewith, executed by the Grantor in the sum of Seventy-Five Thousand Dollars, ($75,000), final payment due 11/15/2017 and to secure payment of all such further sums as may hereafter be loaned or advanced by the Beneficiary herein . . . ."

Ex. 101. The Deeds of Trust purport to secure notes that contain maturity dates the same as the dates listed in the Deeds of Trust. That is, the Deeds of Trust are using those maturity dates to describe the notes they secure. If the Deeds of Trust are to be read in this way, the First 20018 Deed of Trust essentially provides, "this deed of trust secures a

MEMORANDUM OF DECISION − 36

note that has a maturity date of 11/15/2017." Regardless of whether the Deeds of Trust

contain their own maturity date or whether they are describing the underlying note, the

Court reaches the same conclusion.

While this Court can find no Idaho law on point,[17] this very issue was addressed

by a bankruptcy court in North Carolina. In *In re Head Grading Co., Inc.*, a "North

Carolina bankruptcy court found that a lien was unenforceable because the deed of trust

did not specifically identify the debt referenced therein when it referenced a note 'of even

date [t]herewith,' but the note was actually dated one day prior." *Powe v. Deutsche Bank*

*Nat'l Tr. Co. for Residential Asset Securitization Tr. Series 2004-A7 Mortg. Pass-*

*Through Certificates 2004-G*, No. 4-15-CV-00661-ALMCAN, 2017 WL 9250372, at \*6

(E.D. Tex. July 6, 2017), report and recommendation adopted, No. 4:15-CV-661, 2017

WL 4784379 (E.D. Tex. Oct. 24, 2017) (discussing *Beaman v. Head (In re Head Grading*

*Co., Inc.)*, 353 B.R. 122 (Bankr. E.D.N.C. 2006)). The *Powe* court continued:

> North Carolina law expressly requires a deed of trust to identify the secured
> debt. *Willows II, LLC v. Branch Banking & Trust, Co. (In re Willows II,*
> *LLC)*, 485 B.R. 528, 537 (Bankr. E.D.N.C. Jan. 10, 2013). Moreover,
> subsequent North Carolina cases considering *Head Grading Co.* have
> clarified its holding. Indeed the *Willows* court . . . explained that the proper
> focus is "on whether the identifying information contained in the deed of
> trust (whatever that information may be) specifically identifies the
> underlying debt and is consistent with the underlying debt," not whether the
> dates are identical.

---

[17] *Supra, n. 5.* This Court concludes that, if faced with the exact facts presented here, the Idaho appellate
courts would find the same as this Court with respect to this issue.

*Id*. One of these clarifying cases is *Beckhart v. Nationwide Tr. Servs., Inc*., No. 7:11-CV-231-D, 2012 WL 3648105, at *4 (E.D.N.C. Aug. 21, 2012). That court stated:

> North Carolina law does not require a deed of trust to use any particular piece of information to identify the underlying debt. Thus, merely because the [d]eed of [t]rust fails to reference the date of the [p]romissory [n]ote does not per se invalidate the [d]eed of [t]rust. Rather, the court focuses on whether the identifying information contained in the deed of trust (whatever that information may be) specifically identifies the underlying debt and is consistent with the underlying debt.

*Id.* (internal citations omitted).

In *In re Willows II, LLC*, the court discussed the rationale for requiring a mortgage to identify the obligation it secured, and applied this same rationale to deeds of trust. 485 B.R. at 537. In doing so, it elaborated on the holdings from the following cases: *Walston v. Twiford*, 248 N.C. 691, 105 S.E.2d 62 (1958); *Harper v. Edwards*, 115 N.C. 246, 20 S.E. 392 (1894); *Belton v. Bank*, 186 N.C. 614, 120 S.E. 220 (1923). The court explained:

> The decisions in *Walston*, *Harper* and *Belton*, when considered together, explain the rationale for requiring a mortgage to identify the obligation secured. First, as provided in *Harper*, the mortgage must be "sufficient to put subsequent purchasers upon inquiry and to charge them with notice." This entails a determination as to whether the mortgage language would in any way "deceive or mislead" those examining the record as to "the nature or amount of" the obligation secured by the mortgage. Second, the mortgage must also be confined to the obligations intended to be secured by the parties to the mortgage agreement. These two underlying requirements should be taken into consideration when deciding whether a mortgage properly identifies the obligation secured. Finally, as demonstrated by the [c]ourt in *Harper*, concerns for the possibility of "fraudulent substitution" of "fictitious debts" should also influence the analysis.

*Willows II, LLC v. Branch Banking & Trust, Co. (In re Willows II*, *LLC)*, 485 B.R. at 536–37.

MEMORANDUM OF DECISION − 38

In *Willows*, the recorded deed of trust purported to secure a promissory note dated September 7, 2005. *Id*. at 530. The note was actually dated September 8, 2005. *Id.* The issue before the court was whether the deed of trust properly identified the obligation it secured. *Id.* The court stated:

> To explain, the Deed of Trust is sufficient to put subsequent purchasers and creditors on notice of the nature and amount of the obligation secured. . . . It correctly provides subsequent purchasers and lenders with the amount of the obligation, the fact that the obligation contains a variable interest rate, the borrower, the lender, the loan number, the commitment letter associated with the loan, the property serving as collateral, the grantor, the grantee, the beneficiary of the Deed of Trust, and the fact that future advances of up to $675,000.00 may be secured by the collateral. With this information provided in the Deed of Trust, no subsequent purchasers or lenders could genuinely claim that they had been deceived or misled as to the nature or amount of the secured obligation.

485 B.R. at 537.

The *Willows* court also discussed two cases that held a deed of trust did not properly identify the obligation it secured:

> The holdings in *Ferguson* and *Enderle* establish that a deed of trust does not properly identify the obligation secured when the obligor on the note recited in the deed of trust and the obligor on the note produced by the creditor are different, and the deed of trust contains no reference that it secures the debt of the obligor who executed the note produced. As emphasized, both deeds of trust in *Ferguson* and *Enderle* apparently failed to contain any information indicating that they secured the debt owed by the persons named on the note produced by the creditor.

*Id.* at 533 (discussing *Putnam v. Ferguson*, 130 N.C. App. 95, 97–98, 502 S.E.2d 386, 388 (1998) and *In re Enderle*, 110 N.C. App. 773, 775, 431 S.E.2d 549, 550 (1993)).

The North Carolina case law is predicated on a statute requiring that a deed of trust specifically identify the obligation it secures. This Court can find no similar

MEMORANDUM OF DECISION − 39

requirement under Idaho law. The Plaintiff cites Idaho Code §§ 45-1502 and 1503 in

support of the proposition that a deed of trust must reference the obligation it purports to

secure. Dkt. No. 21. However, while those statutes do address transfers in trust to secure

obligations, they do not have any clear requirement of such. Additionally, Plaintiff cites

to "Am. Jur. 2d Sec 64, p. 645" for the proposition that a deed of trust must specifically

identify the obligation it purports to secure. The Court presumes[18] Plaintiff refers to 54A

Am. Jur. 2d Mortgages § 64, which provides, "A valid mortgage contains a description of

the obligation it is intended to secure." Notwithstanding the fact that this is a secondary

source and not binding upon this Court, the source does not state that a deed of trust (or a

mortgage) must specifically identify the obligation it purports to secure. Rather, it uses

the word "description," which is in line with the North Carolina cases.

In Idaho, "[t]he primary purpose of recording is to give notice to others that an

interest is claimed in real property." *Anderson Land Co. v. Small Bus. Admin. (In re Big

River Grain, Inc.)*, 718 F.2d at 970 (citing *Matheson v. Harris*, 98 Idaho 758, 572 P.2d at

864). Using this proposition, along with the reasoning from *Willows*, this Court concludes

that a deed of trust must contain sufficient notice of the obligation it is intended to secure

such that no subsequent purchasers or lenders could genuinely claim that they had been

deceived or misled as to the nature or amount of the secured obligation. Utilizing this

---

[18] Am. Jur. 2d Sec 64, p. 645 is not a valid citation.

MEMORANDUM OF DECISION – 40

requirement, the Court finds the Deeds of Trust at issue here give others sufficient notice of the underlying obligations and the interests claimed in real property.

   1.    *First 20018 Note and Deed of Trust*

The First 20018 Note identifies Shiloh Management Services, Inc. as the debtor, and identifies the Lucille Borses Family Trust as the creditor. Ex. 100. It states that Shiloh promises to pay back a total sum of $75,000 at 12% interest, and references a subject property of "20018 Silver Spur." *Id.*

The First 20018 Deed of Trust identifies Shiloh Management Services, Inc. as the Grantor of the Deed of Trust and identifies the Lucille Borses Family Trust as the Trustee and Beneficiary. Ex. 101. It states that it is implemented for the purpose of securing a $75,000 promissory note executed by the Beneficiary to the Grantor. *Id.* It also references a property "Commonly known as 20018 Silver Spur, Wilder, ID." *Id.*

However, the First 20018 Note was executed on March 18, 2017, and has a maturity date of September 17, 2017. Ex. 100. The First 20018 Deed of Trust was made March 16, 2017, signed by Mr. Pyles on April 19, 2017, and recorded the same day. Ex. 101. It states that it secures a note with a maturity date of November 15, 2017. *Id.* Finally, the First 20018 Deed of Trust states that it secures a promissory note that was executed "of even date herewith." *Id*.

   2.    *Second 20018 Note and Deed of Trust*

The Second 20018 Note identifies Shiloh Management Services, Inc. as the debtor. Ex. 102. It identifies the Lucille Borses Family Trust as the creditor. *Id.* It states

MEMORANDUM OF DECISION – 41

that Shiloh promises to pay back a total sum of $75,000 at 12% interest, and references a subject property of "20018 Silver Spur." *Id.*

The Second 20018 Deed of Trust identifies Shiloh Management Services, Inc. as the Grantor of the Deed of Trust. Ex. 103. It identifies the Lucille Borses Family Trust as the Trustee and Beneficiary. *Id.* It states its purpose is to secure a $75,000 promissory note executed by the Beneficiary to the Grantor. It also references a property "Commonly known as 20018 Silver Spur, Wilder, ID." *Id.*

However, the Second 20018 Note was executed on July 27, 2017, and has a maturity date of December 27, 2017. Ex. 102. The Second 20018 Deed of Trust was created July 27, 2017, signed by Mr. Pyles on August 31, 2017, and recorded the same day. Ex. 103. It states that it secures a note with a maturity date of February 28, 2018. *Id.* Finally, the Second 20018 Deed of Trust states that it secures a promissory note that was executed "of even date herewith." *Id.*

### 3.    *20172 Note and Deed of Trust*

The 20172 Note identifies Shiloh Management Services, Inc. as the debtor and it identifies the Lucille Borses Family Trust as the creditor. Ex. 104. It states that Shiloh promises to pay back a total sum of $50,000 at 13% interest, and references a subject property of "20172 Silver Spur." *Id.*

The 20172 Deed of Trust identifies Shiloh Management Services, Inc. as the Grantor of the Deed of Trust. Ex. 105. It identifies the Lucille Borses Family Trust as the Trustee and Beneficiary. *Id.* It states that it is for the purpose of securing a $50,000

MEMORANDUM OF DECISION – 42

promissory note executed by the Beneficiary to the Grantor. It also references a property
"Commonly known as 20172 Silver Spur, Wilder, ID." *Id.*

The 20172 Note was executed on July 31, 2017, and has a maturity date of
September 30, 2017. Ex. 104. The 20172 Deed of Trust was created July 31, 2017, signed
by Mr. Pyles on August 10, 2017, and recorded August 11, 2017. Ex. 101. It states that it
secures a note with a maturity date of October 28, 2017. *Id.* Finally, the 20172 Deed of
Trust states that it secures a promissory note that was executed "of even date herewith."
*Id*.

### 4. *20093 Note and Deed of Trust*

The 20093 Note identifies Shiloh Management Services, Inc. as the debtor. Ex.
106. It identifies the Lucille Borses Family Trust as the creditor. *Id.* It states that Shiloh
promises to pay back a total sum of $50,000 at 13% interest. It references a subject
property of "20093 Silver Spur." *Id.*

The 20093 Deed of Trust identifies Shiloh Management Services, Inc. as the
Grantor of the Deed of Trust. Ex. 107. It identifies the Lucille Borses Family Trust as the
Trustee and Beneficiary. *Id.* It states that it is for the purpose of securing a $50,000
promissory note executed by the Beneficiary to the Grantor. It also references a property
"Commonly known as 20093 Silver Spur, Wilder, ID." *Id.*

However, the 20093 Note was executed on March 18, 2017, and has a maturity
date of September 30, 2017. Ex. 106. The 20093 Deed of Trust was made July 31, 2017,
signed by Mr. Pyles on August 10, 2017, and recorded August 11, 2017. Ex. 107. It states

MEMORANDUM OF DECISION − 43

that it secures a note with a maturity date of October 28, 2017. *Id.* Finally, the 20093

Deed of Trust states that it secures a promissory note that was executed "of even date

herewith." *Id*.

    5.    *Analysis*

    Following the reasoning in *Willows,* where the court confirmed the validity of the

deeds of trust, this Court concludes that each of the deeds of trust at issue here provide

notice to subsequent purchasers and lenders of the amount of the obligation, the property

serving as collateral, the grantor and the beneficiary of the Deed of Trust, and the fact

that future advances may be secured by the collateral. Further, like the notes and deeds of

trust at issue in *Willows*, these deeds of trust reference notes with mismatching execution

dates.[19] Unlike *Ferguson* and *Enderle*, where the deeds of trust were held invalid for

failing to identify the obligor or obligation secured, in this case, Shiloh is identified as the

obligor in both the notes and the deeds of trust, and the deeds of trust do in fact indicate

that they secure a debt owed by Shiloh to the creditor, despite the mismatched execution

dates.

    This Court finds that the facts of this case are analogous to those of *Willows*. Here,

the identifying information in the deeds of trust provide sufficient notice of the

obligations they are intended to secure, and are consistent with the underlying debt.

---

[19] All of the deeds of trust purport to secure a promissory note executed "of even date herewith," but the corresponding notes were not executed on those dates.

MEMORANDUM OF DECISION − 44

Accordingly, the deeds of trust here satisfy the primary purpose of recording: to give

notice to others that an interest is claimed in real property.

D.    <u>Preferences under § 547</u>

Finally, Plaintiff argues that the Second 20018 Deed of Trust, the 20172 Deed of

Trust, and the 20093 Deed of Trust are avoidable preference transfers under § 547(b).

Dkt. No. 14. This Court has previously stated:

> Section 547(b) provides that a bankruptcy trustee may avoid any transfer
> (1) of an interest of the debtor in property; (2) to or for the benefit of a
> creditor; (3) for or on account of an antecedent debt; (4) made while the
> debtor was insolvent; (5) made within the ninety days immediately
> preceding the filing of the petition; and (6) that enables the creditor to
> receive more than such creditor would have received if the case were a
> chapter 7 case, the transfer had not been made, and such creditor received
> payment of such debt to the extent provided by the provisions of the Code.
> But even if a transfer meets all of the requirements of § 547(b), the trustee
> may not avoid it if it falls under one of the exceptions listed in § 547(c).

*Rainsdon v. America First Federal Credit Union (In re Power)*, No. 16-40636-JDP, 2017

WL 4158329, at *3 (Bankr. D. Idaho Sept. 18, 2017). "Per § 547(g), the trustee bears the

burden of proving these elements, while the creditor . . . has the burden of proving the

target transfer is excepted from avoidance under § 547(c)." *Gugino v. Credit Acceptance*

*Corp. (In re Conklin)*, 511 B.R. 688, 692 (Bankr. D. Idaho 2014).

"Under § 547(f), a debtor is presumed to be insolvent on and during the 90 days

immediately preceding the petition filing date." *Rainsdon v. America First Federal*

*Credit Union (In re Power)*, 2017 WL 4158329, at *3. It is also apparent that the

MEMORANDUM OF DECISION − 45

transactions were of an interest in property for the benefit of a creditor. Moreover,

Defendant concedes the presumption applies and Debtor was insolvent during this period.

Dkt. No. 9. Defendant disputes that the transfers were made on account of an antecedent

debt and contends that the transfers should be excepted from avoidance under

§ 547(c)(1). The Court will discuss the remaining elements of § 547(b).

1. *The 20018 Deed of Trust, 20172 Deed of Trust, and 20093 Deed of Trust
   were made on account of an antecedent debt*

"An avoidable preference is a transfer of the debtor's property 'for or on account

of an antecedent debt owed by the debtor before such transfer was made . . . .'

§ 547(b)(2). A debt is an 'antecedent debt' if it was created before the transfer occurred."

*Rainsdon v. America First Federal Credit Union (In re Power)*, 2017 WL 4158329, at *4

(citing *Rainsdon v. Farson (In re Farson)*, 387 B.R. 784 (Bankr. D. Idaho 2008)). "A

debt is incurred when the debtor first becomes legally bound to pay." *Krommenhoek v.

Estate of Pfankuch Food Services, Inc. (In re Pfankuch)*, 393 B.R. 18, 26 (Bankr. D.

Idaho 2008) (quoting *Matter of CHG Int'l, Inc.*, 897 F.2d 1479, 1486 (9th Cir. 1990),

*abrogated on other grounds by Union Bank v. Wolas*, 502 U.S. 151, 112 S. Ct. 527, 116

L. Ed. 2d 514 (1991)). "A transferee, by making a payment under a contract to purchase a

property interest, obtains a claim against the transferor and thus becomes a creditor under

the Bankruptcy Code." *Grover v. Gulino (In re Gulino)*, 779 F.2d 546, 551–52 (9th Cir.

1985). The *Gulino* court continued:

> By definition, [a] claim or debt is "antecedent" if the transfer is effectively
> delayed beyond an inconsequential period. If a transfer made for
> contemporaneous consideration is not perfected at once or within the

MEMORANDUM OF DECISION – 46

> statutory grace period of [thirty days], § 547(e)(2), that "debt, which is effective when actually made, will be made antecedent to the delayed effective date of the transfer and therefore will be made a preferential transfer in law, although in fact made concurrently with the advance of money."

*Id.* Simply put, "[a] debt is antecedent if it is incurred before the transfer in question."

*Hymas v. Am. Gen. Fin., Inc.* (*In re Blair*), Nos. 98-40631, 99-6016, 2000 Bankr. LEXIS 2115, at *24–26 (Bankr. D. Idaho May 18, 2000) (citing 5 Collier on Bankruptcy, P 547.03[4] (Matthew Bender 15th Ed. Revised 2000)).

The question therefore is when the transactions occurred. In the case at bar, the parties dispute the proper measure for determining the effectiveness of a transfer under § 547(e)(2). The Code provides a measure for when a transfer takes place for preference purposes. Section 547(e)(2) provides that a transfer is made at the time the transfer takes effect between the transferor and the transferee if the transfer is perfected within thirty days of the transfer being made, or, if perfection does not occur within thirty days, then the transfer is deemed made at the time such transfer is perfected. *See* §§ 547(e)(2)(A) and 547(e)(2)(B). In interpreting this provision, this Court has held:

> A transfer of an interest in real property under the preference law is considered made at the time the "transfer takes effect between the transferor and the transferee . . ." if perfection occurs within [thirty] days of the transfer. 11 U.S.C. § 547(e)(2)(A). Otherwise, the transfer is deemed made upon the date of perfection. 11 U.S.C. § 547(e)(2)(B). A transfer of an interest in real property is "perfected" for preference purposes "when a bona fide purchaser of such [real] property from the debtor against whom applicable law permits such transfer to be perfected cannot acquire an interest that is superior to the interest of the transferee." 11 U.S.C. § 547(e)(1)(A). Under Idaho law, a transfer of an interest in real property is perfected as against a bona fide purchaser of that property when the instrument of conveyance is properly recorded. I.C. § 55-812.

MEMORANDUM OF DECISION − 47

*Hymas v. Am. Gen. Fin., Inc.* (*In re Blair*), 2000 Bankr. LEXIS 2115, *22.

In *Hymas*, the deed of trust was executed (and therefore effective between the debtors and the defendant) on April 1, 1998. It was recorded on April 6, 1998, within the ten-day period prescribed by § 547(e)(2)(A) at the time. *Id.* at *22. The Court deemed the transfer made on April 1, 1998. *Id.* Accordingly, the proper measure for a § 547(e)(2) analysis is the time between executing the deed of trust and recording the deed of trust.

The Second 20018 Deed of Trust, which purportedly secures the Second 20018 Note, was executed and recorded August 31, 2017. Ex. 103. Thus, the transfer is deemed effective as of that date. The Second 20018 Note was executed on July 27, 2017. Ex. 102. The Defendant provided a check for $75,000, and that check was deposited by the Debtor on July 27, 2017. Ex. 108. Because the debt was created before the transfer took effect, this is an antecedent debt for the purposes of § 547(c).

The 20172 Deed of Trust, which purportedly secures the 20172 Note, was executed on August 10, 2017, but was recorded on August 11, 2017. Ex. 105. Because the instrument was recorded within thirty days of execution, the transfer is deemed effective August 10, 2017. The 20172 Note was created July 27, 2017, and signed by Mr. Pyles on July 31, 2017. Ex. 104. Defendant provided a check to Debtor representing the funds of the 20172 Note and it was deposited on July 31, 2017. Ex. 108. Because the debt was created before the transfer took effect, this is an antecedent debt for the purposes of § 547(c).

MEMORANDUM OF DECISION − 48

The 20093 Deed of Trust, which purportedly secures the 20093 Note was executed on August 10, 2017, but was recorded on August 11, 2017. Ex. 107. Because the instrument was recorded within thirty days of execution, the transfer is deemed effective August 10, 2017. The 20093 Note was created on July 31, 2017, and signed by Mr. Pyles on the same day. Ex. 106. Defendant provided a check to Debtor representing the funds of the 20093 Note and it was deposited on July 31, 2017. Ex. 108. Because the debt was created before the transfer took effect, this is an antecedent debt for the purposes of § 547(c).

2.   *The Second 20018 Deed of Trust, the 20172 Deed of Trust, and the 20093 Deed of Trust transfers were made within the 90 days immediately preceding the filing of the bankruptcy petition*

Because the Second 20018 Deed of Trust, the 20172 Deed of Trust, and the 20093 Deed of Trust are deemed effective August 31, 2017, August 10, 2017, and August 10, 2017, respectively, and the underlying bankruptcy was filed on November 1, 2017, the transfers were made within the 90 days immediately preceding the filing of the bankruptcy petition.[20]

3.   *The transfers enabled the creditor to receive more than such creditor would have received if the case were a chapter 7 case, had the transfer not been made, and such creditor received payment of such debt to the extent provided by the provisions of the Code*

---

[20] 90 days from August 10, 2017 is November 8, 2017.

MEMORANDUM OF DECISION – 49

In his complaint, Plaintiff contends that these transfers enabled the Defendant to receive more that it would have received if the case were a chapter 7 case and had the transfer not been made. Dkt. No. 1. Defendant denies this assertion. Dkt. No. 5.

"Section 547(b)(5) 'constitutes the so-called "greater amount test," which requires the court to construct a hypothetical chapter 7 case, and determine what the creditor would have received if the case had proceeded under chapter 7 without the alleged preferential transfer.'" *Rainsdon v. America First Federal Credit Union (In re Power)*, No. 16-40636-JDP, 2017 WL 4158329, at *5 (Bankr. D. Idaho Sept. 18, 2017) (quoting *Schoenmann v. Bank of the West (In re Tenderloin Health)*, 849 F.3d 1231, 1235 (9th Cir. 2017)). "[A]s long as the distribution in [the bankruptcy case] is less than one-hundred percent, *any* payment 'on account' to an unsecured creditor during the preference period will enable that creditor to receive more than he would have received in liquidation had the payment not been made." *Id.* (quoting *Elliott v. Frontier Props. (In re Lewis W. Shurtleff, Inc.)*, 778 F.2d 1416, 1421 (9th Cir. 1985) (emphasis in original)).

The Debtor's bankruptcy petition and schedules were not made a part of the record in the adversary proceeding. "[U]nder Fed. R. Evid. 201(c), the Court may take judicial notice of its official docket, and under Fed. R. Evid. 801(d)(2), it may consider the statements made in Debtors' schedules as admissions." *Rainsdon v. Garcia (In re Garcia)*, 465 B.R. 181, 189 n. 6 (Bankr. D. Idaho 2011) (citing *In re Schweizer*, 354 B.R. 272, 278 n. 3 (Bankr. D. Idaho 2006); *In re Moore*, 01.4 I.B.C.R. 147, 149 n. 7 (Bankr. D. Idaho 2001)).

MEMORANDUM OF DECISION − 50

In *Garcia*, this Court found that the creditor received more than it would have in a chapter 7 case by taking judicial notice of the Debtor's Summary of Schedules indicating "$232,321.31 in liabilities and $198,814.70 in assets." *Id*. (citing BK Case No. 10-40937-JDP Dkt. No. 1). Here, the Debtor's Summary of Schedules indicate $14,689,758.31 in liabilities and $5,878,525 in assets. BK. Case No. 17-01458-JMM Dkt. No. 53. Accordingly, the Defendant's receipt of the full value of the transfers at issue enable it to receive more than it would receive had the transfer not been made, and had Defendant been required to participate pro-rata in distributions to creditors in the bankruptcy case.

The Court finds that, with regard to each of the transfers at issue here, there was a transfer of interest of the debtor in property, to a creditor, on account of antecedent debt, made while the debtor was insolvent within the ninety days immediately preceding the filing of the bankruptcy petition, that enabled the creditor to receive more than the creditor would have received had the transfer not been made, and had Defendant been required to participate pro-rata in distributions to creditors in the bankruptcy case.

4.    *Section 547(c)(1) Defense*

After concluding that the elements of a preference have been met, the Court turns to the question of applicable defenses. Here, Defendant contends it is protected by defenses under § 547(c). Section 547(c)(1) provides that a trustee may not avoid a transfer as a preference to the extent it was:

(A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and
(B) in fact a substantially contemporaneous exchange.

MEMORANDUM OF DECISION − 51

§ 547(c)(1).

New value "means money or money's worth in goods, services, or new credit, or release by a transferee of property previously transferred to such transferee in a transaction that is neither void nor voidable by the debtor or the trustee under any applicable law, including proceeds of such property, but does not include an obligation substituted for an existing obligation[.]" § 547(a)(2).

The Plaintiff argues that no new value was given because the loans had been advanced from Defendant to Debtor prior to the effective date of the deed of trust transfers. In his brief, Plaintiff states,

> [T]he "substantially contemporaneous exchange" defense applies to new value provided by the creditor. Here, of course, the payments from Borses were all made *prior* to the transfer of the property interest. By nature, then, they could not be "substantially contemporaneous exchanges for new value"–there was no new value; the value had already been given.

Dkt. No. 21. This argument cannot stand. If the Plaintiff's argument is adopted, then all advances or loans would have to be given at the exact same time as the transfer of the real property interest to be substantially contemporaneous exchanges. However, this would then prevent any exchanges, or loans, from being antecedent debts under § 547(b). New value would be given, but there would not be an antecedent debt. The Plaintiff's argument defeats the purpose of the § 547(c)(1) analysis to determine whether there was in fact a contemporaneous exchange of new value. This Court will not read a statutory provision in such a way that renders another part of the statute superfluous. *See Hibbs v. Winn*, 542 U.S. 88, 101, 124 S. Ct. 2276, 2286, 159 L. Ed. 2d 172 (2004). Moreover, the

MEMORANDUM OF DECISION − 52

case law is clear that the new value need not be given at the exact same time that the real property transfer takes effect. *See Dye v. Rivera (In re Marino)*, 193 B.R. 907 (9th Cir. BAP 1996), *aff'd*, 117 F.3d 1425 (9th Cir. 1997).

But what if the transfer is perfected outside the statutory window? As stated by this Court in *Power*, the fact that a transferee's interest is not perfected within the thirty-day window allotted by § 547(e)(2) does not, standing alone, prevent the transaction from being a substantially contemporaneous exchange under § 547(c)(1). *Rainsdon v. America First Federal Credit Union (In re Power)*, 2017 WL 4158329, at *3. The Ninth Circuit BAP expressly refused to apply the strict thirty-day window in § 547(e)(2) to the defenses available in § 547(c)(1). "[T]he Ninth Circuit Bankruptcy Appellate Panel has held that '[i]nstead of applying the strict ten-day [now 30–day] limit enumerated in § 547(e)(2), an inquiry into the facts and circumstances of the particular transaction should be made to determine whether a transfer was substantially contemporaneous in fact.'" *Id.* (quoting *Dye v. Rivera (In re Marino)*, 193 B.R. at 916. Thus, the mere fact that a deed of trust was not recorded within 30 days of executing the underlying obligation does not automatically mean the transfer is not, in fact, a substantially contemporaneous exchange.

Accordingly, unlike the § 547(e)(2) analysis where the proper measure is the length of time between executing the deed of trust and recording the deed of trust, the proper measure for a § 547(c)(1) defense is the length of time between executing the underlying obligation—here, the promissory note—and recording the deed of trust that

MEMORANDUM OF DECISION − 53

secures it. "[W]hen the delayed perfection of a security interest can be satisfactorily

explained, the transfer may still be characterized as substantially contemporaneous in

fact." *Id.* (quoting *Dye v. Rivera (In re Marino)*, 193 B.R. at 915. This Court continued:

> The factors used to decide if [the perfecting party] has "satisfactorily
> explained" the delay in perfection of its security interest include the clarity
> of the parties' intent that the transaction be a contemporaneous exchange;
> the length of the delay after the 30–day safe harbor provided in § 547(e)(2);
> whether there were unforseen [sic] circumstances not attributable to the
> perfecting party; and whether the creditor was dilatory or negligent in its
> actions.

*Id.* (citing *Dye v. Rivera (In re Marino)*, 193 B.R. at 916. "The critical inquiry in

determining whether there has been a contemporaneous exchange for new value is

whether the parties intended such an exchange." *McClendon v. Cal-Wood Door (In re

Wadsworth Bldg. Components, Inc.)*, 711 F.2d 122, 124 (9th Cir. 1983).

### i.    Clarity of the parties' intent

Applying the foregoing to the facts of the case at bar, with respect to the Second

20018 Note and Deed of Trust, Mr. Pyles was asked, "Did you intend on behalf of Shiloh

that this transaction was to take place together, that this promissory note and deed of trust

went together and they should be recorded at the same time?" Mr. Pyles responded,

"Correct, yes." He was then asked, "And your explanation as to why that didn't happen?"

Mr. Pyles responded, "I don't recall."

With respect to the 20172 Note and Deed of Trust, Mr. Pyles was asked, "At the

time that you borrowed the money, from the Borses Trust, it was lent to you for the

purpose of securing this property which you were going to acquire with the Borses funds,

MEMORANDUM OF DECISION – 54

is that correct?" Mr. Pyles responded, "I believe so." He was then asked, "And the difference in time between the execution of the promissory note on July 31 and recording the deed of trust is approximately eleven days, is that correct?" Mr. Pyles responded, "Yes." He was then asked, "Did you intend at that time that that transaction as to be conducted or coincide with the lending or the borrowing of the money from the Borses Trust?" Mr. Pyles responded, "Yes."

With respect to the 20093 Note and Deed of Trust, Mr. Pyles was asked, "And the same question as to the [20172 Deed of Trust], that was the fifty-thousand dollar deed of trust on the note dated July 31, again a delay of approximately eleven days, was that intended by you at that time, that that was supposed to be conducted and approved as part of that loan transaction from July 31?" Mr. Pyles responded, "Yes."

Ms. Dammarell corroborated Mr. Pyles' testimony, stating at trial that she thought the deed of trust would be recorded the day after the promissory note was drafted. She testified that she was not aware of any delay between signing the note and recording the deed of trust. As such, based on the testimony provided, the Court finds that both of the parties to the transaction intended for each note and deed of trust to be contemporaneous exchanges for value.

ii.    *Length of the delay after the 30–day safe harbor*

The Second 20018 Note was executed on July 27, 2017, whereas the Second 20018 Deed of Trust was effective on August 31, 2017. This is a delay of approximately 35 days. The 20172 Note was executed on July 31, 2017, while the 20172 Deed of Trust

MEMORANDUM OF DECISION − 55

was effective on August 10, 2017. This is a delay of 10 days. The 20193 Note was

executed on July 31, 2017, whereas the 20193 Deed of Trust was effective on August 10,

2017. This is a delay of 10 days. Accordingly, the only transaction that exceeded the

thirty-day safe harbor of § 547(e)(2) is the Second 20018 Note and Deed of Trust. The

delay was approximately five days.

In *Dye v. Rivera (In re Marino)*, there was a fourteen-day difference in the transfer

of value and the perfection, which was four days beyond the statutory deadline in

§ 547(e)(2).[21] 193 B.R. at 916. The court reasoned that the four-day extension was a

minimal delay. Like the four-day delay in *Dye v. Rivera (In re Marino)*, this Court does

not find the delay to be significant.

> ### iii.   Whether the secured party was dilatory or negligent in its actions

The record in this area is sparse. Ms. Dammarell testified that she relied on the

Debtor to record the Defendant's security interests, here the Deeds of Trust. She assumed

Mr. Pyles was recording the Deeds of Trust the day after they were executed. She did not

follow up to ensure they were recorded, nor did she take the initiative to record them

herself, even though she was aware that Mr. Pyles' work was "sloppy."

In *Dye v. Rivera (In re Marino)*, the court considered this factor. In that case, a

creditor, Rivera, agreed to loan debtor money in exchange for a security interest on two

---

[21] At the time of that case, there was a more restrictive ten-day window allotted by § 547(e)(2), rather than the contemporary thirty-day window applicable in this case.

MEMORANDUM OF DECISION – 56

parcels of property. *Id*. at 908. However, those two parcels were cross-collateralized by

deeds of trust in favor of a different creditor, Tokai. *Id*. at 909. Tokai agreed to

subordinate its interest to Rivera if the debtor paid off Tokai's loan. *Id.* Tokai executed its

subordination agreement after receiving funds from debtor through an escrow account at

a title company. *Id.* Rivera issued checks to the debtor in exchange for security interests

in the property. *Id.* The court held that the exchanges were intended to be substantially

contemporaneous, and that it was the title company that had failed to record the new

deeds of trust and subordination agreement within the statutorily prescribed timeframe.

*Id.* at 915. The court reasoned:

> Rivera performed all acts that were required of him in making the loan and
> had no reason to believe that the deeds of trust would not be recorded
> within the ten-day [now thirty-day] grace period. The fact that the checks
> were issued and the . . . deed of trust was recorded 14 days later than
> execution of the promissory note was beyond [creditor's] control. To avoid
> these transfers on the basis that they were perfected outside of the ten-day
> grace period would contradict the policy underlying both the preference
> statute and the substantially contemporaneous exchange defense.

*Id.*

Here, the parties involved in the transactions were the Defendant and the Debtor.

There was no third-party tasked with the responsibility of recording the Deeds of Trust.

Instead, the parties' past dealings indicate that the Debtor had previously taken care of

recording the Defendant's security interests. However, there is also nothing in the record

to suggest that Defendant took any steps to ensure its interests were timely recorded.

Indeed, Defendant itself could have recorded the Deeds of Trust, especially given Ms.

Dammarell's testimony that she believed Mr. Pyles' work was "sloppy." Accordingly, the

MEMORANDUM OF DECISION – 57

Court finds Defendant was negligent in its actions. However, this factor alone weighing

against the Defendant is not dispositive.

> iv.     *Whether there were unforeseen circumstances not attributable to the*
> *secured party that prevented timely perfection of the security interest*

There is nothing in the record to suggest that there were unforeseen circumstances

not attributable to the Defendant that led to the delay in recording. Accordingly, this

factor weighs against the Defendant.

> v.     *Analysis*

Considering the foregoing factors, the Court concludes the Defendant

satisfactorily explained the delay in perfecting the transfer. The only transaction that

exceeded the thirty-day safe harbor provided by § 547(e)(2) is the Second 20018 Note

and Deed of Trust, and the delay in that instance was only five days. Given Ms.

Dammarell's awareness of Mr. Pyles' "sloppy" work, and the Defendant's failure to

record the Deeds of Trust, or at the very least, for failing to follow up with Mr. Pyles to

ensure the Deeds of Trust were recorded, the Court finds that the Defendant was

negligent in its actions.[22] However, here, the critical inquiry is whether the parties

intended the transfers to be contemporaneous exchanges for value. The Court finds that

the parties did intend for these transfers to be contemporaneous exchanges. This is a

---

[22] *See Dye v. Rivera (In re Marino)*, 193 B.R. 907 (9th Cir. BAP 1996), aff'd, 117 F.3d 1425 (9th Cir.
1997) ("[T]hat [creditor] was neither dilatory or negligent in his actions is significant.").

MEMORANDUM OF DECISION − 58

balancing test. Two factors weigh against the Defendant, whereas the other two do not.[23] However, the critical factor, the parties' intent, weighs in favor of the Defendant. The Court finds that each of the Notes and Deeds of Trust are contemporaneous exchanges for new value. Therefore, the Courts concludes that the Plaintiff may not avoid these Deeds of Trust because they are substantially contemporaneous exchanges for new value pursuant to § 547(c)(1).

### Conclusion

The First 20018 Deed of Trust is voidable by the Plaintiff pursuant to § 544, and invalid as a lien against the 20018 Silver Spur property under §558, for lack of a valid notary acknowledgement under the pre-July 2017 notary statute amendments. The Second 20018 Deed of Trust, 20172 Deed of Trust, and 20093 Deed of Trust are not avoidable by the Plaintiff pursuant to § 544, and not invalid as liens against the subject properties pursuant to §558, because the notary acknowledgements are valid under the amended statute. Additionally, the Deeds of Trust at issue here are not avoidable pursuant to § 544 because they give others sufficient notice of the underlying obligations and the interests claimed in real property. Finally, the Second 20018 Deed of Trust, 20172 Deed

---

[23] *See In re Power*, No. AP 16-08034-JDP, 2018 WL 1887318, at *8 (Bankr. D. Idaho Apr. 18, 2018) (holding that a § 547(c)(1) defense was not available even though the parties intended for the transfer to be contemporaneous exchanges because the defendant delayed at least forty days in perfecting its interest from the time the promissory note was executed, the delay in perfections were not all unforeseen and at least partly attributable to the defendant, and the defendant was dilatory or negligent in its actions).

MEMORANDUM OF DECISION – 59

of Trust, and 20093 Deed of Trust are not avoidable preference transfers under § 547(b)

because they are all substantially contemporaneous exchanges pursuant to § 547(c).

A separate order will be entered.



DATED:  June 17, 2020

_____
JOSEPH M. MEIER
CHIEF U. S. BANKRUPTCY JUDGE

MEMORANDUM OF DECISION – 60